# REPORTS.

## ROCKINGHAM,

### JULY TERM, A. D. 1848.

---

## DOWNING & a. v. WHERRIN.

A testator, having given to his son, J. D., certain land in fee, made the follow-
ing devise: " My will is that if my son, J. D. should not marry and have law-
ful issue of his own body, after his death all the real estate that I have given
him shall be equally divided between his three brothers, Joshua, Samuel and
Ebenezer, their heirs and assigns forever." After the death of the testator,.
the devisee made a conveyance of the land in fee to the defendant. Upon a
bill in equity, brought by the devisees over, praying that the deed of J. D.
might be declared to be void, it was *held* that the remainder limited after the
termination of the estate of J. D. to his three brothers was valid by way of
executory devise, and was not a contingent remainder, and that the deed of
J. D. conveyed no interest to the defendant beyond the life-estate of the
grantor.

Chancery has jurisdiction to investigate and decide upon the validity of a deed·
which is a cloud upon the title to real estate.

IN EQUITY. The bill stated the following case.

On the 20th day of March, A. D. 1798, Josiah Downing,.
the elder, of Newington, was seized of certain real estate,.
situated in Newington, with a house and buildings thereon,

in which he resided. On that day he made his will, by which he devised to his son Josiah, in fee, all his land in Newington. He then made certain bequests to his other children, and then followed this clause:

" My will is that if my son, Josiah Downing, should not marry and have lawful issue of his own body, after his death all the real estate that I have given him shall be equally divided between his three brothers, Joshua, Samuel and Ebenezer, their heirs and assigns forever."

He made his son, Josiah Downing, executor of his will, which was proved on the 19th day of February, 1812.

Josiah Downing, the younger, the executor of the will, immediately upon the death of the testator, entered into possession of the land, and with his sister Elizabeth, occupied it until her death, and afterwards, until the 9th day of October, 1846, when he died, never having had lawful issue of his own body, leaving his brother Ebenezer and certain persons, the children and heirs of his brother Joshua, and certain other persons, the children and heirs of his brother Samuel, surviving him, who are the plaintiffs in this bill.

On the 17th day of March, 1846, Josiah Downing, the younger, conveyed the premises to Margaret Wherrin, the defendant, in consideration of the sum of six hundred and fifty dollars expressed in the deed, which was duly acknowledged and recorded. On the same day she leased the premses to the grantor during his life, on the condition that he should keep them in good repair, and pay the taxes thereon. She also gave him a bond in the penal sum of one thousand dollars, conditioned that if, upon the payment to her by him or his heirs, within four years from the date, of the sum of six hundred and eighty-six dollars, with interest, and of the amount that might be due from him to her for services from that date until the payment, at the rate of one dollar per week, and upon his refunding the sums expended by her for repairs of the property, she should convey to him or

Downing *v.* Wherrin.

his heirs all the interest she had by virtue of his deed to her, the bond should be void.

The bill then alleged that the defendant never paid the grantor any adequate consideration for the deed, but that it was an unlawful contrivance between them for the purpose of depriving the plaintiffs of their lawful and vested right to the land; that upon the decease of Josiah Downing the younger, the possession of the land belonged to the plaintiffs, and that the defendant, upon his death, took possession of the premises, claiming them by virtue of his deed to her, and has ever since been in possession, and has received the income and profits thereof.

The bill prays that the deed to the defendant may be declared to be of no force or effect, the grantor having no lawful right to convey the land, and also because the deed was made for the purpose of depriving the plaintiffs of their right to the land; or if the plaintiffs are not entitled to such relief, that the defendant may be decreed to account, &c.

To this bill the defendant demurred, alleging that Josiah Downing, at the time of making the deed therein mentioned, was lawfully seized in fee tail of the premises thereby conveyed, under the will set forth in the bill; that the only claim of the plaintiff, Ebenezer D. Downing, is under a devise to his three brothers of the remainder in fee, expectant on the said estate tail; that the title of the complainants was barred by Josiah's deed by force of the statute, and that there was no equity in the bill.

The bill was filed by Ebenezer Downing, the children and heirs of Joshua Downing, and the children and heirs of Samuel Downing, against Margaret Wherrin, the grantee of Josiah Downing.

*Freeman,* with whom was *Hackett,* for the defendant.

By the devise to Josiah Downing and his heirs, he has an estate of inheritance, and the words " his heirs," in such connection, are words of limitation and not of purchase.   If there was

nothing more in the will, the estate would be a fee simple. His lawful issue, if any, under such devise, would inherit the estate, first in the order of succession, and, in default of these, collateral kindred. But by explanatory words, or any words restricting the descent to issue only, and excluding all others, the inheritance may be limited and cut down to a fee tail, which the described issue would take by descent under the first words, " his heirs," and could not, by any implication, take as purchasers. In common law conveyances, regularly, an estate tail is created by a gift to a man and his heirs of his body begotten. Lit. § 14. And in gifts in a man's lifetime, no estate of inheritance (except in frank marriage) can be created without the word " heirs." Co. L. 20, a. b. This is the operative word of inheritance : by a gift to a man and to his seed, or to the issues or children of his body, he has but an estate for life. And in 2 Atk. 582, it is said issue in a will may be a word of limitation, but in a deed it is always a word of purchase. And see also 4 Com. Dig. Estates, B. 37. Yet it is said, if land be given to B. and his heirs, to have and to hold to B. and his heirs, if B. have heirs of his body, and if he die without heirs of his body, that it shall revert to the donor, this is an estate-tail, and the *habendum* shall be construed upon the whole deed, on these or the like words, to be a limitation or declaration what heirs are meant in the premises to inherit, and the reversion is in the donor. Co. Lit. 21, a. And see several cases of reverter or remainder on " dying without issue," in a grant. 4 Com. Dig. Estates, B. 3, p. 8. And also Co. L. 26, a. § 28, " Heirs, *nomen operativum*, and creates the estate tail in the husband or wife is to whichever it doth relate."

" If one give lands to B. and his heirs, if he have issue of his body, by this he hath an estate tail." Sheppard's Touchst. ch. 5, p. 103, Exposition of Deeds. So " if lands be given to A. and B., his wife and their heirs, and other heirs of the same A. if the said heirs of the said A. and B. issuing, die

without heirs of themselves, by this they have an estate-tail." And so in all such like cases, where after a limitation of a fee simple, these or such like words are added, viz. : that if he die without heirs of his body the land shall revert, for in all these cases the *habendum* [or condition, &c., as in the last case,] is construed to be a limitation or declaration what heirs are meant before." · And by 2 Bac. Abr. 545, Estate in Tail, B., " such explanation does not retract the gift in the premises, because the words ' his heirs ' have still their operation, and by such construction are more conformable to the intention," &c. And the same doctrine is there applied to a feoff— . to A. and his heirs, and if he dies without heirs of his body, that it shall remain to J. S. in fee. And p. 546 is cited Hob. 172, " If I give land to A. and his heirs, viz. the heirs of his body, this is but an estate tail, for here I explain the general import of the word heirs to be descendants of the body of the donee."

These are cases of conveyances by deed or feoffment, where the word " heirs " is necessary to give an estate of inheritance, and of itself, standing alone, imports a fee simple, but is explained, or its generality is restrained by necessary implication to descendants, as much so as it would be if the limitation had been at first expressly to heirs of the body of the donee, the construction being made upon the whole deed to give effect to the intention of the donor. There is no reason that it should be different on similar words in wills.

There is a great variety in the expressions in devises purporting a failure of issue whereby an estate tail may be limited. 4 Bac. Abr. Leg. and Devises, D. p. 257. Devise to one, " and if he die before issue," or if he depart not leaving issue,—if he die not leaving a son. (Vent. 231.) If it shall please God to take my son R. before he shall have issue of his body. (Owen 29.) To son B., and if he hath issue male of his body, lawfully begotten, then that issue to have it, and if he hath no issue male, then to others in re-

mainder, for " if he hath no issue of his body, then," &c., is as much as to say ",if B. dies without issue male," which had been sufficient to create an estate tail in him.

Where the devise was to a man and his heirs, and if he die without issue, that then the land should go to A. and B. &c., adjudged an estate tail in the first devisee; for in these cases the extent of the word heirs is confined to the descendants or issue of the body of the devisee.   4 Bac. Ab. 258.

Devise to A. for life, and if she marries after his death, and has heirs of her body, then the heirs shall have it.   3 Com. Dig. p. 27.

So in a devise to A. and his heirs, and if he dies without issue, to B. gives A. but an estate tail.   Devise N. 5, p. 428.   Ruled in many cases; eight cited.

Devise to J. S. and his heirs, if he shall have any heirs of his body, else the land shall revert—to J. S. and his heirs, if he have any issue of his body—to J. S. and his heirs, provided that if he die without heirs of his body, the land shall revert.   Shep. Touchst. 440.   Fee Tail.   By all these and such like devises an estate tail is made, and J. S., the devisee, shall have the same accordingly.   And see Sonday's Case, 9 Co. Rep. 128.

" It has long been settled," says Mr. Jarman, (2 Wills 418,) " that words referring to the death of a person without issue, whether the terms be ' if he die without issue,' ' if he have no issue,' or ' if he die before he has any issue,' or ' for want or in default of issue,' are construed to import a general, indefinite failure of issue, that is, a failure or extinction of issue at any period."   He had before said " a devise to a person and his heirs, followed by a limitation over, in case of his dying without issue, confers an estate tail, on the ground that the testator has, by the words introducing the limitation over, explained himself to have used the word heirs, in the preceding devise, in the qualified and restrictive sense of heirs of the body."   " And it is to be observed

that where the person on whose general failure of issue a devise is expressly made expectant, is the heir at law of the testator, he becomes, by application of th rule under consideration, tenant in tail by implication, in precisely the same manner as if there had been a prior devise to him and his heirs by the will." 1 Jarm. on Wills 491. Indeed, he might have said that, in either case, be the intent what it might, the conclusion from the express words of the will and the legal rules of descent is unavoidable, that the estate is effectually entailed, inasmuch as only heirs of the body can inherit as long as issue remain, and when these fail the remainder is given away to strangers.

The words of this devise over " should not have lawful issue of his own body " are sufficient, and come within the class of expressions which have been held to denote a failure of issue indefinitely at any time. It is impossible to distinguish them from those in some of the cases referred to ; the difference is merely formal, and they are the same in sense as " if he has no issue," by Jarman ; to J. S. and his heirs, if he should have any heirs of his body, else," that is, if should not; " to J. S. and his heirs, if he should have any issue," &c.

The force of the words, indeed, is conceded, and is equivalent to " if he die without issue," for there can be no absolute failure of issue till death ; the law knows no impossibility that any person living should issue, and the contingency, in all cases where it limits an estate, looks forward to the decease of the first taker, till when there can be neither descent nor remainder. Lit. § 34 ; Co. L. § 32, p. 28 a.

But, it is contended by Lewis, in his treatise on Perpetuities, that the force of such expressions is always liable to be controlled and their general import restrained, by expressions incorporated into the limitation, or circumstances *dehors* or extrinsic to the gift, arising on the face of the instrument, &c., and by the plaintiff's counsel, following Lewis, that in numerous cases the general words have been

restrained to issue living at the death; and a multitude of cases is referred to under different classes, most of which, it is truly said, are not precisely in point, yet the result of them is represented to be that courts readily seize on any expressions tending to show that the indefinite failure was not intended. pp. 158, 196.

It is not disputed but general or indefinite words may be restrained by other words or circumstances, consistent with their application in any case, fairly demonstrating a restricted meaning or application; but till this is done they stand on their general legal import.

A supposed vulgar or natural sense of such general words, in common parlance different from their legal sense, has been alluded to in such cases. 1 Peere Wms. 198. The notion was suggested by Lord *Harcourt*, in *Nichols* v. *Hooper*, in 1712, and by Lord *Macclesfield*, six or eight years after, particularly in two decisions relating to personalty. *Forth* v. *Chapman* and *Pinbury* v. *Elkin*, 1 P. Wms. 563, A. D. 1719, reversing the decrees of Sir *Joseph Jekyl*, and allowing the restrictive interpretation. And in all these cases a great distinction is taken between real and personal estate, in regard to the construction and restriction of such general words. And in *Forth* v. *Chapman* different constructions were made of the same words as applied to real and personal property, the first being the indefinite, the other the restricted interpretation, of the words "leaving issue,"—*ut res magis valeat*, &c. 1 P. Wms. 667, A. D. 1720. And the doctrine of this case, and that the construction should be according to the subject-matter, has been considered the established law ever since. See Har. Dig.;· *Byng* v. *Lord Strafford*, cit. 5 Beav. 558 and 7 Adolph. & Ellis 636, &c., cases cited in *Doe* v. *Ewert*.

Sheppard's Touchstone, (Exposition of Deeds, ch. 5, § 9, p. 88,) lays down that "if words may have a double intendment, and the one standeth with law, and the other is against law, it shall be taken in that sense which is agreea-

ble to law ; and, therefore, if tenant in tail make a lease of land to B. for term of life, and do not mention for whose life it shall be, this shall be taken for the life of the lessor, and not for the life of the lessee, as it shall be if such a lease be made by a tenant in·fee simple." A limitation cannot lawfully be made of an inheritance in chattels. A devisee of personality must take by purchase, if at all. In such devises, the first devise is absolute, and the devise over on a general failure of issue void. If, therefore, the words of the contingency, standing by themselves, and without other concurring circumstances and evidences of intention, were capable of any such vulgar sense of a restricted failure, of which a court could take notice, this would seem to be a sufficient ground to save devises of personalty from the operation of the general rule of interpretation applying to the limitation of real estate ; and the contingency in the general meaning being improperly applied to personal property, courts would naturally look out for some other meaning which might be supposed. But no decision was ever made, even as to personalty, on such ground of a popular sense, without other supposed proofs of a restricted intention.

Lord *Hardwicke* says, in *Beauclerk* v. *Dormer*, 2 Atk. 313, " the general argument that the sense of the words dying without issue, must, according to common parlance, mean without issue at the time of his death, is only taken in as an auxiliary in arguing these sort of cases; and I do not know one instance where the determination has turned singly upon this particular point." And Chancellor *Kent*, in *Anderson* v. *Jackson*, doubts the fact of such meaning in common parlance, and thinks it a tradition, handed down without much reflection or examination as to its truth, and that the legal interpretation is in general more conformable to the real intention. 16 Johns. 400, 401.

But in cases where doubts may be raised on expressions in the will as to the indefinite construction, the circumstance,

where it exists, of the subject being personal property, has always, since the case of *Forth* v. *Chapman*, been taken into the account. 1 P. Wms. 667. And the doctrine of the different construction of such expressions, according to the subject-matter, and of the broad distinction between real and personal, in this respect, been recurred to in favor of the restrictive construction. Fearne's Con. Rem. 476 ; 361, X. Such cases, therefore, afford no satisfactory proof that the construction would be the same as to real estate.

Further, in very many cases, both those relating to real and those to personal, it becomes a question whether "issue" is a word of limitation or of purchase. If, in case of a devise over on failure of issue, it is clear that the issue, if there should be any, should take as purchasers, whether the devise be of real or personal estate, this involves the restricted failure, and there needs no other argument of intention. All the cases, therefore, wherein it has been held that the issue, if any, should take as purchasers, are inapplicable to the present; "his heirs" are the operative words of descent by which the issue of Josiah Downing, if any, must have taken, if at all. Had there been issue, they could not, on any *construction,* have taken by the will as purchasers. The contingent devise over qualifies and restrains the general sense of the word "heirs" to heirs of his body, and makes the inheritance an estate tail. Where an inheritance is given in the first instance, and a devise over on failure of issue, no estate will arise to the issue by implication as purchasers; they must take as heirs, if at all, under the first devise, according to the case of *Higham* v. *Barker,* cited 4 Bac. Abr. 289 ; Cro. El. 16, &c.

Mr. Jarman, indeed, suggests a distinction in regard to motives of convenience for the indefinite construction, implying an estate tail where no inheritance is expressly given, which do not apply to cases of an express devise of a fee, in the first instance, and points out some of the different consequences in the two cases ; yet he implicitly admits

that the distinction suggested " has not been a recognized principle of construction in any of the cases," although he surmises " its influence may be traced in some of them." 2 Jarm. on Wills 440. The books abundantly furnish cases to the contrary of this distinction. Take, for one, *Doe* v. *Ellis*, 9 East 382.

In *Doe* v. *Ewert*, Lord *Denman*, in concluding his opinion, adverting to the argument that in many cases cited for an estate tail in the first taker, the estate was limited to him indefinitely, (that is, for life,) and not by words of inheritance, says the courts have never gone upon any distinction of that sort. 7 Adol. & Ellis 636, &c.

" The general rule and legal interpretation of such words devising to Josiah Downing and his heirs, followed by a devise over, if he should not have lawful issue, (standing by themselves,) to create an estate tail are, it is conceived, clear, certain and indisputable ; the controlling and qualifying force of expressions, to give them a different effect, should be equally so, at least they should be such as to ' raise a fair inference of a restricted intention.' " Sir *Wm. Grant*, in *Barlow* v. *Salter*, 17 Ves. 479.

The expressions yield only to " a clear manifestation in the context to use them in the restricted sense." 2 Jarm. 427. And Lewis states that " any words which unambiguously indicate an intention to confine the failure of issue on which the estate is given over to a dying without issue, living at the death of the first taker will be sufficient," &c. " But," he says, " these words and expressions must be clear and definite," &c.

There may be dismissed at once the consideration of all those decisions grounded on expressions or circumstances which are not and cannot be pretended to exist in this case, such as dying under age, charges on the devise over, devise over of life estate or to survivor, &c.

It remains to consider the expressions in this will which are supposed to have a bearing on its construction.

An estate limited over after a death without issue, upon a contingency, is not an estate tail, but an executory devise." 3 Com. Dig. 431, Devise N. 6. And Comyn gives several instances, none of which are necessarily implied in the general expression : " shall die without issue," the additions " being under age," " then living," " in the lifetime of B.," and the like. See *Pells* v. *Brown*, Cro. Jac. 590. But if it had been " lawful issue," or issue by his wife, it could not, one would think, alter the meaning so as to introduce a contingency. Yet a show of argument is made that the words " should not marry," coupled with the failure of issue, should alter the construction so as to restrict the failure of issue to the time of the death, and several cases and passages are cited from Lewis' Treatise on Perpetuities to give some countenance to the argument.

Lewis, having treated of several circumstances restricting failure of issue, mentions that of the words importing such failure being associated with a collateral contingency personal to the ancestor, and says, " upon the like principle, if the contingency associated with that of the failure of issue, be the death of the ancestor unmarried, the restricted construction will obtain." p. 229. And he refers to 2 Jarman's Powell 574, and the cases of *Wilson* v. *Bayley*, *Hepworth* v. *Taylor*, *Maberly* v. *Stroue*, *Doe* v. *Cook*, 7 East 269, and *Doe* v. *Rawding*, 2 B. & Ald. 441, all which, with *Bell* v. *Phyn*, are cited and abridged, and briefly stated by Powell and Jarman for another purpose, that is, as showing the grounds for substituting " or " for the copulative conjunction. 1 Jarman's Pow. 384 ; 1 Jarman 455–459. Upon which abridgement, omitting the last case, and leaving out the explanation of Powell and Jarman of the word unmarried, and the construction of that word in *Doe* v. *Cooke* and *Doe* v. *Rawding*, as meaning, in that connection, not having a husband or wife living at the time, in which sense only could it have any effect towards restraining the failure of issue to the time of the death, he

attempts to sustain his position of the restricted operation of the word "unmarried," taken in the other sense, of "never having married." 1 Jarman's Pow. 386 ; 1 Jarm. 458, 459 ; 2 Jarm. 429 ; 2 Jarman's Pow. 574 ; 1 Jarm. 456, 457, a.

In the two latter cases, however, he observes that the restricted construction might be referred to the collateral contingency of dying under age, and not alone to the associating the word unmarried, just as though it could be doubted whether the not leaving a widow might not be as good a contingency for a limitation over as any other; the question in the cases being whether by reading the events, without leaving a widow, and without issue, copulatively or disjunctively, they should form one contingency, on which the estate should go over, and three contingencies, on either of which it should be retained, or the reverse. These cases, therefore, have nothing to do with the present, unless the words "should not marry" may be so brought into connection, and made to refer to the time of Josiah's death, as to make the will read "if he shall not leave a widow or lawful issue," or "if he shall die without leaving a widow and lawful issue," &c.; and then the contingency did not happen, for he did marry, and his widow still survives.

In the case of *Wilson* v. *Bayley*, even as quoted by Lewis, there would seem to be ground, aside from the mention of marriage, for holding that the testator did not look forward to a more remote limitation of the absolute property than the time of the decease of the one of his two sons who should survive the other ; indeed, the vesting of no part of the property was absolutely postponed to the decease of either of them. As soon as John should have a child born, the trustees were directed to assign the trust estate to him, to enable him, indeed, to make provision for his children ; but this makes no difference ; to enable him to do this the property must vest in the father. The trustees had nothing further to do than to assign over the property according to the will; and then their trust would be executed. And though

the father or child, or both, should die immediately after, or the conveyance should not have been made, yet the right of the father would have attached ; it could not go back or re-main·with the trustees ; there is no resulting trust for them, nor for the devisees over ; and the legal representative of the father, if not the child, would be entitled to the assignment, and the ulterior limitation be at an end. And in reference to this direction to assign the estate to John, and as one alternative of the contingency on which the assignment was to be made, which was contemplated to be made, if at all, in his lifetime, the property was to be held in trust for his son Mark, in like manner as for John, and referring to the same prior limitations another alternative was, that if both sons should die unmarried, and neither should have any issue, the property should go over to other legatees. On this view of that case, as presented by Powell, Jarman and Lewis, cited by them from Brown's Parliamentary Cases, and referred to in the argument for the plaintiffs, it is not easy to see how the omission of the word unmarried, and of any mention of marriage, could have changed the restrictive construction, or that the insertion was of the least importance in giving that construction. No such question appears to have been moved ; the question on which the case turned was, whether the marriage and having issue should be taken in the copulative or disjunctive, and so whether the contingency had happened or not, and not con-cerning the validity of the devise over, or the failure of issue intended, which, on any construction, had taken place. There was enough in this will, without those words, to ex-clude all notion of an estate tail, or of any effect of a fail-ure of issue indefinitely at any future period, and to limit the contingency to the life of John or Mark.

But on examination of the case, as reported by Brown, it appears that the will of Mark Tew, the testator, contains other material circumstances, which are omitted in that abridgement, restraining the words of the contingency,

" that neither of them shall have any issue lawfully begot-
ten," to the lifetime of the devisees, and confirming the re-
strictive construction beyond all possibility of doubt or equiv-
ocation. The will of M. T. bequeathed certain leases and
leasehold lands, held for terms of years, subject to sundry
charges and legacies, in trust to permit his son Mark to re-
ceive the rents and profits until the day of his marriage, and
then to make provision out of the rents, &c., by way of join-
ture for his wife for life, if she should survive him, and upon
further trust, &c., " that in case my son Mark shall have
any issue lawfully begotten, then in such case they, the
said" trustees, &c., " shall at or upon the request of my
son Mark, convey, assign and make over unto him the
said several leases, &c., and all my estate, term and interest
therein, in such manner as " counsel should advise, &c., " to
enable my son M. to make provision for his children law-
fully begotten or to be begotten." But his will further was
that if Mark shall happen to have no issue lawfully begot-
ten, then and in such case the lands and premises so divises
as aforesaid," in trust for Mark, " shall, from and after his
death, go to and vest in my son John." How vest? and
when? He goes on to say " and that from thenceforth,"
that is, from the death of M. " my said son John shall be
permitted and suffered to receive the rents, issues and profits
thereof, and be entitled thereto, and to such conveyance of
the same from my said trustees as is before directed with
respect to my said son Mark concerning the same, subject
to such jointure," &c. And he further adds, " it being my
will and desire that if my son Mark dies before he is mar-
ried, or if he should die leaving no issue of his body law-
fully to be begotten, then the said lands shall be enjoyed as
aforesaid by my said son John, subject to the jointure," &c.
and legacies. 5 Br. P. C. 388, (Dublin ed. of 1784.) And
the testator, also, by his will, bequeathed to the same trus-
tees other leases and leasehold lands, some of them freehold

leases, renewable forever, and the others for terms of years, subject to several legacies, in trust for John, with limitation over to Mark, in the same form, in substance, and almost verbatim, *mutatis mutandis,* as in the first devise for Mark. So far, in case neither John or Mark should marry and have issue born, no conveyance could be made, and the property would remain in the trustees until the decease of them both, and this is the contingency for which the will provides in the following words: " Item. My will is that, in case both my sons Mark and John shall happen to die unmarried, and that neither of them shall have any issue lawfully begotten, then my daughters, Mary, Sarah and Catherine, and the survivor and survivors of them and their assigns, be permitted to receive all the rents, issues and profits of all the said leases, lands and premises as tenants in common, and not as joint tenants." The will then gives sundry legacies, charged on the fortunes bequeathed to Mark and John, respectively, and after some other provisions not now material, makes his two sons residuary devisees. Catherine Bayly, the only surviving daughter of the testator, after the decease of John, the survivor of the two sons, with her husband, claimed by survivorship against the heirs at law and representatives of her father and brothers, and the children and administrator of her deceased sisters, and obtained a decree under the will, in the chancery in Ireland, for the whole of the devised leasehold. For reversal or variation of so much of this decree as adjudged the whole to the respondents, this appeal in Parliament was brought; and for the appellants Sir *Charles Pratt,* Lord *Camden,* argued that by the words and meaning of the will, the testator's three daughters, Mary, Sarah and Catherine, had such a contingent interest vested in them, on his death, as was transmissible to their assigns or representatives, that they took as tenants in common, and that the words " survivors," &c., could not be construed as descriptive of the persons to take on the contingency happening. No objection appears to have been made to substitu-

Downing *v.* Wherrin.

ting " or " for the copulative, in the ulterior devise to the daughters.    The intent was too plain from the prior limitations of which it was the alternative, to make it a question. But the argument put the case on two grounds : 1.  If, upon the death of both brothers without issue, the one married and the other not, the contingency had happened, then the appellants, children of the deceased sister, were entitled to an equal share with the surviving sister in the devised estate. 2.   But if the contingency had never happened, because John Tew married, yet the appellants were equally entitled with the respondent, as heir at law of Mark Tew, the elder and younger, and John Tew, and next of kin of John Tew, and so, either way, the decree was erroneous.   Could the devise over have been held void, as being too remote, the effect would have been the same as by the not happening of the contingency, to let in the claims of the heirs and next of kin.   But this ground does not appear to have been taken for the appellants in the House of Lords; yet as such an objection, if it existed, might be raised on the pleadings, some of the appellants, claiming as heirs, it was obviated, and answered by referring to the conveyances to be made to Mark and John, on the determination of the contingency one way, confining it to the lifetime of the survivor of them. The principal, if not the only matter in controversy in the case seems to have been regarding the time when the contingent interest in the devisees over attached or vested, and the right of survivorship.

This case, abridged and cited by Jarman and Powell, for the sole purpose of the disjunctive construction, Lewis has copied and applied as an authority for the restrictive construction of words importing an indefinite failure of issue, by reason of the mention of marriage, when no such point was or could be made in the case ; and that effect was produced by other expressions and circumstances which put the matter beyond all question, such as the conveyances before mentioned, and the explanation of the contingency, " shall

have no issue," by the express words in the devise over, "shall from and after his death go to and vest in John," who shall "from thenceforth" be permitted to receive the rents, &c., fixing with the utmost precision and certainty that language is capable of, the decease as the *terminus a quo,* John's interest should commence, and when the contingency of the devise must be determined one way or the other, and the devise over take effect, if ever; and the subsequent alternative devise to the three daughters, referring to the same contingency and expressed in similar language, the word "unmarried" being disconnected and put to silence by the disjunctive construction.

The report of the case goes not one step towards sustaining such a doctrine as Lewis uses it for, and it is very doubtful if he ever read more of it than Jarman's or Powell's abstract, or even that very carefully. Considering the facility with which he works over cases foreign to his matter, to make new law, it is almost strange, if he had read the full report, he had not used it to prove his other allegation of the restrictive force of the words "after his death." These words were in the will, and the failure of issue was restricted to the lifetime.

*Hapworth* v. *Taylor,* another of the plaintiffs' cases, in the same category, is cited from Cox. The note of the case in Jarman is very brief, and as stated in the plaintiffs' argument. Not finding Cox at hand, Chitty's Equity Digest has been resorted to, which contains very material circumstances, omitted in Jarman, and decisive of a restrictive construction, independently of the word "unmarried." 2 Chit. Eq. Dig. 1397. Chitty's note is this:—
"Testator gave legacies to his three children, payable after the death of his executrix, and directed that if any of the children should die unmarried and without issue, before the death of the executrix, the legacy should go to the surviving children. One of the daughters married, but died without

issue in the lifetime of the executrix.    The legacy survived
to the other children." *Hapworth* v. *Taylor*, 1 Cox 112.

As thus stated, the case comes within the rule in *Pells* v.
*Brown*, Cro. Jac. 590, whether the word " unmarried " is
retained or not; the contingency as to each child's share
was to be determined, one way or the other, in the lifetime
of the executrix, if not also a surviving child.

In the next case, *Maberly* v. *Strode*, 3 Ves. 450, there
was sufficient ground from the context in the will, without
resorting to the words " unmarried " or " after his decease,"
which were in that will, for restricting the failure of issue
to the death of the devisee for life, or, at farthest, to the
time when his youngest child or issue living at his decease,
if he had any, might arrive to twenty-one, the decease of
them all under that age being one contingency on which
the property was to go over.    The questions were whether
the limitation over was good, the testator's son not having
died unmarried.    Second, if good, whether the words of sur-
vivorship applied to the death of the testator or of his son.
And it was held that in this will the word " unmarried "
must be construed in its most usual acceptation, never hav-
ing married; that this required the substitution of " or " for
the copulative, and that the words of survivorship here re-
ferred to the decease of the testator, and were intended to
prevent a lapse.    No question was raised as to the restricted
construction, and the case has no bearing on it further than
to show that, on some grounds, it was adopted without
dissent.

*Woodward* v. *Glassbrook* is not referred to by Lewis, but
being found in Jarman, in company with the other cases, is
referred to on the part of the plaintiffs as supporting the re-
stricted construction of failure of issue, though no such
question could arise in that case, the only alternatives being
dying unmarried or under age.

One other case of Mr. Powell on the disjunctive construc-
tion, (*Bell* v. *Phyn*, 7 Ves. 453,) though not noticed by

Lewis is cited, on the part of the plaintiffs, for the restric-
tive construction of the words importing a failure of issue,
by reason of the associated words " should not marry."
The case, according to Powell's version of it, is this : a tes-
tator bequeathed the residue of his personal estate equally
between his three children, and in case of the death of any
of them without being married and having children, the
share of the child so dying to be divided between the sur-
viving children.     Sir *William Grant,* on the authority of
the last case, (*Maberly* v. *Strode,*) held that the word "and "
was to be construed " or," and, consequently, that a daugh-
ter who had married was entitled.    There was nothing in
the will to extend the meaning of the word children, beyond
its usual import, to remote descendants ; and Sir *William
Grant,* referring to the different constructions of " dying
without issue," as stated in *Pinbury* v. *Elkin,* 1 P. Wms.
564, says " the first [that is, the indefinite failure,] is out of
the question, the word being children.    The legatees over,
too, could only take by the description " surviving children,"
which, taking survivorship to refer to the period of distribu-
tion, brings the case within the rule of *Pells* v. *Brown,* and
the other cases where a failure of issue is limited to happen
within the life of some person in being at the testator's de-
cease.    2 Jarm. 651 ; Cro. Jac. 590.

There could have been no occasion, therefore, to resort to
the words " without being married," as an argument of a
restricted failure, nor if there had been, would it have avail-
ed.    Sir *William Grant,* in giving the judgment, says the
contingency of dying unmarried and without children cannot
properly be said to mean anything more than the latter
event, as, legally speaking, there can be no children without
a marriage, and to give effect to these words, deems it neces-
sary to construe the copulative as a disjunctive.    And both
Mr. Powell and Mr. Jarman, after him, treat " unmarried,"
in such connection, as inoperative, and the result of the two
events, marrying and having issue, as being precisely the

same as though having issue stood alone.   Indeed, it is almost incredible that a man of plain common sense, who knows that marriage is a necessary prerequisite to having lawful issue, can consider it otherwise.   What could be more natural than that a father going to speak of the family and off-spring of a bachelor, his son, should put him in mind of marriage.   It is but an appropriate and decent preface, and nothing more need be intended.   The contingency of dying without issue and " unmarried," meaning without leaving a husband or wife, which may apply as well to a widower as to a bachelor, is quite another affair.   In this sense only do Powell and Jarman suppose " unmarried " to have any influence to restrain the indefinite interpretation.   The words of Mr. Downing's will do not admit of this construction, and if they did, they could not aid the plaintiffs.

Neither the plaintiff's argument nor the position of Lewis, as to the operation of such words, used in a sense excluding marriage at any time to restrain the indefinite interpretation of words importing a failure of issue, are in the slighest degree sustained or countenanced by the reported cases referred to, or by Powell's or Jarman's treatises, from whose abridgements, for another purpose, they are copied and misapplied in the argument.   No such question or point was decided, contended for or moved in any of those cases, nor by Powell or Jarman, as may be seen by examining the reports themselves, and by comparing two or three clauses.   Lewis 176, [228,] § 5, 177, [229,] if the " contingency associated," &c. " be the death of the ancestor unmarried," &c., with 2 Jarm. 429.   " The same principle," &c., where it will be seen that Lewis stops at the word " unmarried," omitting the explanation subjoined to the parallel clause in 1 Jarm. Pow. 386, which wholly deprives those cases of their application, if they could possibly have any.

In various other reported cases of wills, wherein marriage is mentioned in connection with failure of issue, no conse-

quence is attached to the mention of marriage. In *Lees* v. *Mosely*, the restrictive construction obtained on grounds not applying here. Here was an express devise for life, remainder over to the issue, with a power of distribution among the issue, and devise over if the first devisee should not marry and leave issue to attain twenty-one. *Sonday's Case*, 9 Co. Rep. 127, and *Wealthy* v. *Bosville*, cited in Fearnes' Con. Rem. 300, 387, from Rep. Tem. Hardw. B. R. 258, are instances of estates tail, notwithstanding words of marriage.

But supposing the restrictive interpretation, in this case, by some means established, and the indefinite failure limiting an estate tail to be out of the question, as in *Bell* v. *Phyn*, that case would furnish sufficient authority for reading the contingency in the disjunctive. If it should be required to give effect to the words "should not marry," and to assign some distinct specific object of the testator to be answered by them, and it should be demanded what those words were first put there for, the same case and the cases *Doe* v. *Cooke*, 7 East 209, and *Doe* v. *Rawding*, 2 B. & Ald. 441, referred to by Lewis, and *Framingham* v. *Brand*, 3 Atk. 390, and the course of reasoning of Lords *Hardwicke* and *Ellenborough* and Sir *William Grant* would suggest the best answer and most rational construction on these grounds: that the words "should not marry" not admitting the construction in *Doe* v. *Cooke*, dying without a wife surviving him to give them effect, the disjunctive should be substituted for "and;" that the testator felt some solicitude for his son's marriage, and was willing to lay before him some inducements to marry; that he looked forward to the wants and expenses of his son's family, wife as well as children and posterity, and meant to give him the absolute disposal of the property, and enable him to support and provide for them, in case of his marriage; but that if he never married it should, after his decease, go to his three brothers. On this construction, which seems to be the only

Downing *v*. Wherrin.

reasonable one, if the words relating to marriage can have an effect inconsistent with an estate tail, Josiah Downing, the devisee, having married, has become entitled to the absolute property.

Supposing, however, that the words " should not marry " can, by the rules of law, have no operation in the construction of the will now in question, it remains to be seen whether there are any other expressions or circumstances sufficient to control and restrict the general legal import of the words which, of themselves, are conceded to indicate an indefinite failure of issue, and limit an estate tail. And first, if the words " after his decease " can have such effect.

This is another ground on which the restricted construction is contended for by the plaintiffs, and five cases of wills of personal property are quoted to this point, viz.: *Pinbury* v. *Elkin*, *Stratton* v. *Paine*, *Rackstraw* v. *Vile*, *Trotter* v. *Oswald*, and *Wilkinson* v. *South*.

The earliest of them is *Pinbury* v. *Elkin*, decided by Lord *Macclesfield*, in chancery, about 1719. 1 P. Wms. 563. For what points that case can be considered an authority is very uncertain. Within a year or two before, the same chancellor had decided the case of *Target* v. *Gaunt*, on a will containing a devise over after the decease of the first devisee, in case he should die without issue. 1 P. Wms. 432. The decision was for the restricted construction on other grounds, and no notice was taken of the words " after his decease." The devise was to his son for life, and no longer, and after his decease, to such of his issue as he should appoint.

Two senses of dying without issue were suggested by the court. 1. Vulgar sense at his death. 2. Legal sense whenever issue fails. Here the intent was such issue as he should or at least might appoint, which must be intended issue then living; and this construction to be favored because it supports the will, whereas the other destroys it. The devise of the term was held good, and a great diversity taken between

devise of a freehold estate for life, and if he dies without issue to B., and a devise of a term in the same words.

In *Pinbury* v. *Elkin*, reference was again made to the different senses of dying without issue. The circumstance that the legacy was intended as a personal provision for the legatee, and that it would be strange clog on personal estate, if an indefinite failure was intended, was stated among the reasons of the judgment. The words were " then after her decease," &c., and Lord *Macclesfield* held that the words " then after," that is, immediately after, confined the failure to the time of the death, evidently reading " then " as an adverb of time to qualify the word " after," unless his expression, as stated in P. Wms., was a mere play upon words. There is no evidence that " after," merely, without the concurrence of the word " then," would have been regarded by him as any evidence of restrictive intention. And if the case were decided solely on this expression " then after," it could not be considered an authority for a case where both words do not concur. But considering the state of the law at that time, the wide distinction alluded to in this and the other cases mentioned, between a gift of personal legacies and terms and the limitation of estates of freehold, and the door opened by the different senses to be put on words importing a failure of issue, and the doctrine held in *Forth* v. *Chapman*, of the different construction of the same words according to the subject-matter, there is little doubt that Lord *Macclesfield* would have come to the same result without these words " then after her decease," which, so interpreted, concurring with his views on other grounds, were thrown in merely as an auxiliary or make weight, and not amongst the principal grounds of decision, one of which was, as Lewis, citing this case, says, that a personal benefit was intended the legatee, &c. Lewis' Perp. 235, 330, 158, 197, n. k. This case has been questioned, and has not, on this point, been considered of high authority. Lord *Hardwicke*, in *Beauchamp* v. *Dormer*,

says the case turned on " after," construed as if it had been at, or immediately after, and says Lord *Macclesfield* laid no stress on the word " then." 2 Atk. 312, 313. Lord *Hardwicke* rejects " then " as an adverb of time, in the case then before him; whether " after " was fairly construed by Lord *Macclesfield* he had no occasion to give an opinion. But the word " then " has been retained in the reference to that case in the books, and as cited in other cases. 4 Bac. Ab. 310; Fearne's C. R. 359, 473. Lewis considers a principal ground of the decision to have been overruled in *Beauclerk* v. *Dormer*, by the opinion of Lord *Hardwicke*, which, he says, was delivered without due attention to this case. Sup. 158, n. k. Sir *William Grant*, in *Donne* v. *Penny*, questioned the fairness of the construction of the word " after " as immediately after. 19 Ves. 548. And Jarman says " that no judge of later times would have departed from the legal sense of the words, upon such an expression as that in this case, admits of little doubt;" but submits that, followed as it has been in *Trotter* v. *Oswald* and *Wilkinson* v. *South*, neither of which is cited in *Donne* v. *Penny*, its authority is confirmed; and he concludes that where the words are " immediately after," or " at the decease " of the first taker, as in *Stratton* v. *Payne* and *Rackstraw* v. *Vile*, the applicability of the doctrine of *Pinbury* v. *Elkin* seems still more conclusive, on account of the greater definiteness of the expression. 2 Jarm. on Wills 445. But what have these cases to do with the doctrine of *Pinbury* v. *Elkin* ? If there is an express, unequivocal restriction of the failure of issue to the time of the decease of the first taker, or by the devise over on such failure, to the decease, which implies the same restriction, there can be no question but it may be a proper contingency to create an executory devise. But it is an abuse of the word " after " to pretend that, of itself, it imports such restriction. The very circumstance that is capable of such modifications and associates as " immediately," " shortly," " long," " a great while," " soon," " at and after,"

" from and after," " six months' after," and the like, proves that when not so qualified it merely postpones one event to another, and extends into futurity indefinitely, to one time as well as another. Let one substitute any one of the restrictive words " at " " upon," " immediately after," supposed to be the equivalents of after, and connect it indiscriminately with such adjuncts as are proper for the word " after," and see what sense he will make of it, or if he will make the same sense. These cases of *Stratton* v. *Payne* and *Rackstraw* v. *Vile,* as well as *Doe* v. *Frost,* the words being " on his decease," the word " on " being of itself restrictive, and by no means equivalent to " after ;" and *Robinson* v. *Grey,* where there was a devise in trust to pay the income to daughters, and the survivor of them, for life, with contingent devises, to take effect immediately from and after the decease of the surviving daughter, may, therefore, be dismissed as irrelevant to the present question. The only remaining cases adduced, indeed, the only cases to be found giving any countenance to the construction put on the words " after his decease," in *Pinbury* v. *Elkin,* are two cases, *Trotter* v. *Oswald* and *Wilkinson* v. *South,* determined sixty or eighty years afterwards by Lord *Kenyon,* the bias of whose mind appears by several cases, which have been much questioned, to have been strongly in favor of the restrictive construction.

*Trotter* v. *Oswald* was a case of personal estate determined in chancery by Sir *Lloyd Kenyon,* then M. R. By the note of that case, (2 Chitty's Eq. Dig. § 1397, referring to Cox 317,) it appears there was a devise to trustees for use of B. expressly during his life, and to the lawful heirs of his body after his decease. This looks very much like an intent to divide the interest in the property at the precise period of B.'s death, and give it then to his lineal heirs as purchasers. Besides, the trust for B., if executory, as it probably was, according to the case of *Robinson* v. *Grey,* 9 East 1, could not execute in B. and unite with the legal estate devised to

the heirs of his body, who might take as purchasers by the express gift to them; and this they must do, if at all, at the decease of B., and the devise over to O. being the alternative, must relate to the same period that the issue would take; and the dying with or without issue, in respect to the purchasers who should take at B.'s death, is called a contingency with a double aspect. Heirs of the body must have been held words of purchase, and being so, the conclusion was inevitable that the devise over was an executory devise to take the place of the other to the issue, and at the same period, if the contingency happened the other way. The decision, therefore, whether right or wrong, can have no bearing on the case now in question, for there is here no express devise to the issue, and none can be implied to render nugatory the inheritance expressly given to Josiah Downing, the devisee, which his issue, if any, should have taken by descent, be it in fee simple or in fee tail.

For a distinction between real and personal estate, in the construction of a devise to heirs, &c., as to their taking by purchase, see Fearne's C. R. 490 ; Ex'y Dev., ch. 4, § 1 and note.

The other case, *Wilkinson* v. *South*, was determined by Lord *Kenyon* and the Court of King's Bench, about the same time that he had under discussion the cases of *Porter* v. *Bradley* and *Sheers* v. *Jeffrey*, his *dicta* in which, on the restrictive interpretation and the different constructions to be made in regard to real and personal estate, according to the subject-matter, have received the marked disapprobation of subsequent judges, as going to break down settled rules.

The case was this. Edward Parker bequeathed a term of years to his son, Samuel Parker, and the heirs of his body, and their heirs and assigns forever; but in default of issue, then after his death to go to his testator's grandson, Thomas Wilkinson, the plaintiff, his heirs and assigns forever. And Samuel Parker survived the testator, and died leaving no issue. It was certified that Thomas Wilkinson was entitled to the leasehold.

The language of Lord *Kenyon's* opinion is observable. He is reported to have said " the only question is whether, on a fair construction of the words," &c., " the testator meant that the limitation over to Thomas Wilkinson should only take effect after an indefinite failure of issue of Samuel Parker, or on the failure of issue living at the time of the death of Samuel Parker. Just as though the indefinite failure would not include the failure at the time of his decease, if it should so happen. One would suppose the word " only " misplaced by the printer, applying it to the indefinite instead of the restricted failure, where it belongs. But his lordship, after adverting to the rule respecting personal property, limited in a manner that would give an estate tail, and to the words of the will " to Samuel Parker and the heirs of his body and their heirs," &c., saying " that if those words stood uncontrolled by any thing subsequent in the will, the absolute interest would have vested in him, but other words are added," &c., repeating the words and following the track of Lord *Macclesfield,* in *Pinbury* v. *Elkin,* upon the exploded use of the word " then," thus proceeds : " There is a case in the books to show that ' then ' and ' when ' are adverbs of time. Then at what time was the estate to go over to the testator's grandson ? At the death of Samuel Parker, if he left no issue. There is nothing in the will to show that the testator intended that the limitation over should not take effect until future generations but, on the contrary, there is sufficient to show that he intended that the estate should, in one event, vest in the grandson, at the time of Samuel Parker's death, and that is the time which the law allows in cases of executory devises."

In respect to the testator's intention, nothing here is said which might not as well apply to all estates tail, very many of which are spent with the life of the donee, for want of issue at his death, and, in the same event, the donor, in all such cases, intends that the estate shall remain over or re-

vert, according to the limitation, as well as in every case of issue failing at any time after his death, whenever the failure may happen. The inquiry should have been, what is there to show that the testator intended the limitation over should not take effect in the other event of the failure of issue of the donee, at some time after his death, if it should so happen ?

" The rule respecting executory devises," Lord *Kenyon* proceeds, "is extremely well settled, and a limitation, by way of executory devise is good, if it may take place after a life or lives in being, and within twenty-one years, and so forth, afterwards; * * * * this is a question of intention, and I am clearly of the opinion that the testator's intention was that if Samuel Parker did not leave any issue at his death, the subsequent limitation should take effect." This intention brings the case within the rule of executory devises, as Lord *Kenyon* states it. But is the rule correctly stated ? Every thing in the whole opinion seems to be awry ; the word " only " misplaced ; the exploded use of the word " then," in such situation, as an adverb of time ; the question and answer is a mere jingle of words, the answer begging the question ; the absurd notion that an executory devisee would come into possession sooner than a remainder man could in the same event ; and the statement of the rule to suit the case according to events, using " may," instead of " must, if at all," and " after a life," &c., instead of " within."

If the cases adjudged by Lord *Kenyon* and his opinions can be thought to bear with much weight on the present question of a restricted failure of issue or an indefinite failure, let this opinion in *Wilkinson* v. *South* be compared with the sound doctrine of Lord *Macclesfield* and Lord *Kenyon* himself, in other cases bearing on this as well as other points of our case.

*Goodright* v. *Wright,* in B. R. Parker, (Lord M.) C. J., 1 P. Wms. 197.

Devise to A. and his issue; remainder to B. and his issue.

Held, the heir in tail is absolutely in the power of his ancestor as much as the heir in fee simple.

The heir cannot take by descent when nothing is in the ancestor, and he cannot take as purchaser contrary to the intent.

. Altering settled rules concerning property is the most dangerous way of removing landmarks.

Objection. The ancestor dying never took, and so the heir to whom the remainder was limited, took by purchase.

Answer by C. J. " The construction must be according to the meaning and import of the words when the will is made, and not according to any accident *ex post facto*."

In *Jee* v. *Audley*, as stated. Testator gave £1,000 to M. H., and the issue of her body begotten and to be begotten, and in default of such issue, he gave it to be equally divided between the daughters then living of John Jee and Elizabeth his wife. 1 Jarm. on Wills, 254, from 1 Cox 324.

In favor of the limitation over it was said to be hard to adhere to the rule, that after-born daughters might take, to defeat the intention, especially considering John and Elizabeth Jee were seventy years old, there was no possibility of such ; that the cases proceeded on the implied intent of the testator, and never meant to give effect to words to defeat the intent. But Sir *Lloyd Kenyon*, M. R., observed that " it had been decided in several cases that, in bequests to children, all those born before the interest vested in possession were entitled." " This," continued his honor, " being a settled principle, I shall not strain to save an intention, at the expense of removing the landmarks of the law. It is of infinite importance to abide by decided cases, and, perhaps, more on this subject than any other. The general principles which apply to this case are not disputed ; limitations of personal estate are void, unless they necessarily vest, if

at all, within a life or lives in being, and twenty one-years and nine or ten months afterward. This has been sanctioned, &c. * * * * and is not now to be broken in upon. I am desired to do in this case something which I do not feel myself at liberty to do, namely, to suppose it impossible for persons at so advanced an age as John and Elizabeth Jee to have children, but, &c. * * * * Another thing pressed upon me is to decide upon the events [?] which have happened; but I cannot do this without overturning very many cases. The single question before me is, not whether the limitation is good, in the events which have happened, but whether it were good in its creation, and if it were not, I cannot make it so. Then must this limitation, if at all, necessarily take place within the limits prescribed by law? The words, in default, &c.; * * * * as it stands, this limitation may take in after-born daughters; this point, &c. * * * * and the effect of law, on such limitation, cannot make any difference in construing such intention. If, then, this will extended to after-born daughters, is it within the rule of law? Most certainly not, because John and Elizabeth Jee might have children born ten years after the testator's death, and then M. H. might die without issue, that is, the issue then became extinct fifty years afterwards, in which case it would transgress the rule prescribed."

These observations of Lord *Macclesfield* and Lord *Kenyon* contain enough to neutralize the reasoning on which the decision in *Wilkinson* v. *South* is grounded, and to limit its authority to cases in all respects precisely similar.

Two other cases, and two only, are found in relation to personal estate, in which the word " after," &c., has been resorted to or noticed, as affording an argument of a restricted failure of issue.

In the case of *Green* v. *Reed,* before Lord *King,* in 1729, soon after *Pinbury* v. *Elkin,* the words were as in that case, " then after the death," &c.; but Lord *King* gave no opinion on their general effect, the restrictive construction being

excluded by additional words " in manner aforesaid," refer-
ring to a prior limitation on an indefinite failure of issue,
and so the limitation over was held void as being too re-
mote. 4 Bac. Ab. 306, and Fearne's C. R. 491, 366, from
Fitzgib. 68.

And in *Donne* v. *Penny*, the restricted failure was con-
tended for on the words " after him;" but Sir *William
Grant* ruled against this construction, not because the words
were not equivalent to " after his decease," and it is not
easy to see why they do not mean as much, but because
they were too ambiguous to vary the construction, at the
same time intimating a doubt whether the word " after."
was fairly construed in *Pinbury* v. *Elkin,* 19 Ves. 548.

The " two cases only " from which Lewis thinks a con-
clusion may be derived favorable to extending to limitations
of real estate, the influence of the words " after his decease,"
to produce the restricted construction, though in the same
paragraph he confesses no actual decision, in regard to such
limitations, has yet admitted that influence, are *Doe* v.
*Frost* and *Robinson* v. *Grey,* to which are opposed, as he
says, *Walter* v. *Drew* and *Doe* v. *Cooper.* Lewis' Perpet.
179, 234.

Now that neither these " two cases only," nor any other
relating to real estate, conflict with *Walter* v. *Drew* or *Doe*
v. *Cooper,* on the influence of these words, may easily be
seen by looking at the cases themselves, as reported.

In *Robinson* v. *Grey,* no question of indefinite or restrict-
ed construction did or could arise. The language was clear
and explicit, and it was held, on all sides, to give the legal
estate to the trustee, during the life of the testatrix's daugh-
ters, they being *ce. qu.* trust with the legal remainder to the
daughters' children, who should be living at the decease of
the survivor of them as purchasers, and an alternative re-
mainder to the testatrix's heir at law, if all the daughters
should die without leaving issue. And the question was,
what estate in remainder the daughters or their children

might take by implication from the devise over being to the heir at law, and the children were held to take a fee simple, and not merely for life, though there were no words of limitation to their heirs ; and this seems to have been the only point in question in the case. 9 East 1. Jarman cites this case for the purpose only of showing how far the legal estate will be executed in a trustee to answer the purposes of the trust. 2 Jarm. on Wills 206, 214.

*Doe* v. *Frost* was decided distinctly on the ground of the ulterior devise being chargeable with legacies of the first devisee, who, if he pleased, might bequeath the full value of the estate. 3 B. & A. 546. The words " after his decease " were not in the will, nor any words merely tantamount. Mr. Jarman makes no question what would be the effect of such words in relation to real estate, but only in respect to this case, simply says the words " on the decease of said W., adverted to by Mr. Justice *Holroyd,* would seem to be unimportant, according to the earlier case of *Walter* v. *Drew,*" and after a brief statement of that case he adds, " *Comyn,* C. B., held it to be an estate tail," &c. ; and further adds that " no notice was taken of a similar expression in *Doe* v. *Cooper,* notwithstanding the stress laid on the words introducing the devise over, as conferring an estate tail." 2 Jarm. 439, 440. In the opinion of Mr. Jarman, therefore, it appears that the case of *Doe* v. *Frost* must rest on the legacies charged on the devise over, and not on the ancillary argument from the words " on his decease," taking it for granted that these words are no more restrictive than those in the other cases, a point which is by no means conceded. " On " is not synonymous with " after " nor with " then after."

Both Jarman and Lewis profess to give a statement of the case of *Walter* v. *Drew,* by which it appears that the person after whose decease, without leaving issue, the estate was devised over, was heir at law of the testator. And both lay down that the same rule holds, in such case, as in

case of an express devise to one in fee, with like limitation over in remainder to raise an estate tail in the heir, and Jarman says "precisely in the same manner as if there had been a prior devise to him and his heirs in the will."

Lewis, referring to Jarman and to this same case of *Walter* v. *Drew,* Com. 373, (2 Jarm. on Wills 439; Lewis 181, 236,) after stating the two cases of *Walter* v. *Drew* and *Doe* v. *Cooper,* p. 237, further says it does not appear in either of them that the question of the force of the words referring to the decease of the ancestor in the gift over, was at all presented to the notice of the judges.

These observations and statements being compared with the cases themselves as reported, may serve to show with how little care book-making is sometimes carried on, by compiling from abridgements at second or third hand. It will be manifest that neither Jarman or Lewis ever looked at Comyn's report of *Walter* v. *Drew,* to which they refer, in reference to what they say of that case. The time and circumstances of that decision deserve some notice. Sir *John Comyn* was not then chief baron nor a judge, as Jarman supposes, but was counsel for the unsuccessful party, and, as appears by his own lucid report, made the best of his client's case. The hearing was within three or four years after the decisions in *Forth* v. *Chapman* and *Pinbury* v. *Elkin,* in both which Lord *Macclesfield* had reversed the decisions of Sir *Joseph Jekyl,* and whilst Lord *Macclesfield* was still lord chancellor and Sir *Joseph Jekyl* master of the rolls.

In those then recent cases a distinction had been taken between real and personal estate, in respect to the construction of wills containing limitations over on failure of issue, and in *Pinbury* v. *Elkin,* besides the subject-matter being a legacy chargeable on personal estate, the words " then after her decease " were supposed to have an influence ; and in *Forth* v. *Chapman* the identical words " die leaving no issue " were construed in different senses, as real or personal

property disposed of in the same sentence. In those cases the restricted interpretation had obtained in regard to personal property, and the case in question presented a fair optunity to test the effect of like expressions in devises of real. How that was done will best appear by the report itself, which is here transcribed. 1 Com. R. 372.

" *Walter* v. *Drew*, C. B. T. 9, G. 1, (June, 1723.)
Case on trial of Ejectment cor., Baron Price.

Richard Weeks, grandfather of plaintiff's lessor, being seized in fee, having two sons, William his elder and Richard his younger, by will, the tenth of March, 1664, devised in these words: 'It is my will that if William Weeks, my son, shall happen to die and leave no issue of his body lawfully begotten, that then in that case and not otherwise, after the death of said William, my son, I give and bequeath all my lands of inheritance in L. unto the said Richard, my son, to have and to hold the same after the death of the said William, to him and his heirs.' The testator died March 19, 1664. William, his son and heir, entered, and M., 1692, suffered a recovery to the use of J. Foote and his heirs, till payment of a sum of money, and then to himself and his heirs. Afterwards, by lease and release, eighth and ninth of June, 1697, he conveyed the equity of redemption to J. Foote and his heirs, under whom the defendant claimed. January 9th, 1721, William Weeks died without issue, and November 12th, 1715, Richard Weeks died, leaving Richard Weeks, the lessor of the plaintiff, his son and heir, and the question was whether he was barred by the com. recovery suffered by William, which was argued before Mr. Baron *Price*, at his chambers in Sergeant's Inn.

And I insisted that the devise to Richard, the second son, was an executory devise, for he could not take by way of remainder, for a remainder cannot be without a particular estate; but here no estate is devised to William, but the testator suffers his estate to descend to him, and only makes

a devise to Richard, if William died and left no issue of his body, and, therefore, Richard cannot take at all, if he does not take by way of executory devise. A man cannot take by devise if there are not words that give the estate to him. A man deviseth to his son after the death of his wife, (2 Leon. a. 226; 2 Jon. 98, v.; 2 Lev. 207, S. C.,) resolved the wife took nothing. And the case in Vaugh. c. 259, 262, (*Gardiner* v. *Sheldon,*) was, a man deviseth that after the death of his son and daughters without issue; and if it shall happen that my son George, and Margaret and Katherine, my daughters, die without issue, then all my freehold lands shall go to my nephew, Rose, and his heirs; and it was agreed that his daughters took nothing at all by his will. It is true, that in this case in Vaughan it is said that Rose did not take by way of executory devise, because the estate given to him was to take effect after the death of the son and daughters without issue, which was a contingency too remote for the law to allow.

But here the contingency was to take effect on the death of William, for the words are not if William die without issue, but if he die and leave no issue, which are tantamount to saying if he die not having issue at the time of his death; and this is enforced by the subsequent words, if William die and leave no issue, then in that case and not otherwise, after the death of the said William, I give the same to Richard, to hold after the death of the said William, to him and his heirs; by which it appears that his intention was that Richard should have the lands immediately upon the death of William." Comyn's Arg.

" Sergeant Cheshire, c. contra : No one shall take by executory devise but he who cannot take any other way, and here he may take by remainder; for, by the words, it appears to be the testator's intention that William, his eldest son, should take in the first place ; and I know no rule for the construction of a will but the intention of the devisor, and here his intention is manifest that William should take. A

man devised to his wife, and then says, after her death, my son William is to have it, and if he die, his son is to have it; it was holden that William took an estate tail." 9 Co. 127.

So in Mo. 127, there were no words of gift, yet it was holden a good devise. So in 1 Roll. 836; 2 Cro. 415, a.

And in the present case the recovery was suffered upon the opinion of Sergeant Pemberton and Levinz, that William, by this will, took an estate tail, remainder to Richard. (Pemberton, C. J., B. R. and C. B.; Lev. Jus. C. B., before 1686.) To which the baron inclined, and afterwards, upon further consideration, gave his opinion that William took an estate tail by this will, for the words shall not be construed to give an estate by way of executory devise, but where the devisee cannot take any other way. But here William took by the will, for it is a necessary implication that he shall have it to him and the heirs of his body, for the heir shall take by the will, though he is not expressly named, or there be no devise to him by express words.

Also 9 Co. 128, a devise to the wife for life, and after her decease William is to have it; and if he die his son is to have it. It was adjudged that William took an estate tail. So no devise expressly to the heir, yet he took. Mo. 127; 1 Roll 836; 2 Cro. 415.

These supposed important words, referring to the decease of the ancestor in the gift over, therefore, upon the construction of which the discussion had been recently had in chancery, on the express ground of the distinction between real and personal estate, which, no doubt, suggested the point in *Walter* v. *Drew*, as applying to real estate, and was then fresh in the recollection of every professional man, so far from being passed over inadvertently, were distinctly presented and urged upon the court to restrict the failure of issue to the time of the decease, and received all due consideration.

The ground taken by Comyn, on both points, was suffi-

ciently answered and obviated by the cases cited in the argument of the opposing counsel, and, in the opinion of the court, establishing the construction of an estate tail, especially by *Sonday's Case*, a leading case, often quoted by the books, and never denied to be law. 9 Co. 127, 128.

It was decided (8 Jac. 1,) by the two chief justices and chief baron, one of whom was Lord *Coke*. There is a very observable resemblance in the phraseology of the devise in that case to that in Mr. Downing's will; "if his son William marry and have issue male by his wife (in the affirmative,) his son to have the house; and if he have no male issue lawfully begotten, &c., then his son Samuel to have it; and if Samuel marry and have issue male, &c., that then his son to have the house after his decease, and if no issue male, then his son Thomas to have the house; if Thomas marry, having a male issue of his body, &c., then his son to have the house after his decease: if he have no male issue, then his son Richard in like manner, and so to Daniel. The first devise to the son of William, the heir, if he marry and have issue by his wife, and over to Samuel, if he should have no issue male, being adjudged to give an estate in tail male to William, was considered as settling the law that the heir should, in such case, take an estate tail by the will, though no express devise to him, and the successive devises to each son and to his issue male after his decease, if he should marry and have issue male, with limitation over to the next, if he should have no issue male, were adjudged to give estates in tail male to the sons, respectively, in succession, upon the limitation over, "if he have no issue male," being considered tantamount to saying "if he die without issue male," words sufficient to create an estate tail, notwithstanding the words "after his decease," which, though applying, in the first place, to the decease of the issue, were manifestly carried forward in sense to the clause devising over to the next taken in default of issue male, the same as though there repeated.

Keeping in mind the legal maxim, " *expressio eorum quæ tacite insunt nihil operatur*," that the title of the heir-at-law by descent, is equivalent to, and operates in the same manner as an express devise to him in fee simple, with devise limiting over the estate to another on failure of issue or heirs of his body, to give him an estate tail ; that it is immaterial whether the devise to the ancestor and to his heirs or heirs of his body be in the same or different clauses, and that the construction is to be made upon the whole will taken together, however detached the parts, it is not possible to distinguish these two cases, in principle, from that now before the court, or if at all distinguishable, this case is stronger in favor of an estate tail.

In both those cases the heir had a fee simple, descendible to his general heirs, in the same manner as the fee devised to Josiah Downing, in the present case, unless cut down and limited to an estate tail by the contingent devise over. In *Sonday's Case* there was a devise to the son of the heir, as well as of the other successive devises, if they should marry and have issue male, the word " son " being used as a word of limitation, and the devise over was, in all essential terms, similar to that in the present case, " if he shall not have issue," only adding the word " male," creating an estate in tail male, instead of tail general, and omitting words " after his decease," necessarily implied, and in some of the devises to the issue male before expressed. This form of expression, " if he shall have no issue, &c.," equivalent to " if he should not have lawful issue," being held tantamount to a dying without issue, expressive of a failure of issue or issue male, indefinitely and sufficient to limit an estate tail.

But in *Walter* v. *Drew*, where there was no such express devise to the issue, who, of course, could take only by descent, the ambiguous word " have " occurred, which, in the recent case of *Forth* v. *Chapman*, had been held in respect to personalty to restrict the dying without issue, to a failure

at the time of the decease, as well as the words " after the death of said William," repeated in the devise over to Richard, both in the words of gift and in the *habendum ;* and these circumstances, as well as the want of an express devise to William, the heir, were urged upon the court in favor of a restricted failure of issue and an executory devise to Richard, and were overruled ; and thus the title of the purchaser under the common recovery, who had advanced his money more than thirty years before, on the opinion of two of the most eminent counsel in England, as to its validity, was established, and the law was settled as to the inefficiency of such expressions to control and restrict the general legal meaning of words indicating a failure of issue as to time, in a limitation of real estate, and so the law has remained ever since, no decided case being found nor any dictum even of a judge, to the contrary.

The case of *Doe* v. *Cooper* was decided in B. R., Lord *Kenyon* presiding, February 7, 1801, two or three years after *Wilkinson* v. *South* and *Roe d. Sheus* v. *Jeffrey,* in which, as well as in *Trotter* v. *Oswald* and *Porter* v. *Bradley,* he had under consideration the restricted force, if any, of the words " leaving no issue," and after his decease in a contingent devise over, and in two of the cases, had questioned the propriety of a different construction of words as applied to real or to personal estate, as held in *Forth* v. *Chapman,* 1 East 229. It was only before him that these questions had made any figure, from the time of Lord *Macclesfield* downwards. There was no occasion, therefore, to remind Lord *Kenyon* of the force of these words, which were stated in the case before him, nor is there the least ground to surmise that they were inadvertently overlooked, and not considered for all they were worth, or to impugn the decision in *Doe* v. *Cooper,* on that ground. The first devise, it is true, was for life only, but that can make no difference ; there was also an express gift, after his decease, to his issue, and both together, by the rule in *Shelley's Case,* amount to the same thing as

a gift to him and his issue, or to him and his heirs of his body, in one clause ; and if not so, the issue, by the express gift to them, might take as purchasers, and there could be no occasion to resort to implication of an estate tail for them to take at all; so that the case was free from any influence of convenience of that sort for the construction of an estate tail, could it have had any effect, which Lord *Denman* distinctly denies. *Doe* v. *Ewart*, 7 Ad. and Ellis 636, in conclusion.

Suppose that Henry Cock, the testator, had added to the words of contingency " die without leaving issue," the words " living at his decease," could it be pretended that any supposed general intent could have prevented the failure of issue from being confined to the time of the decease, or given effect to the devise over on a failure of issue at any subsequent period ?    And if the words " after his decease," introducing the devise over, meant as much, and that the contingency was to be determined one way or the other, and the limitation over take effect, if at all, only at the decease of the first devisee, then these words would have effectually controlled and prevented the implication of an estate tail, which the court unreservedly decided he took, from the words of devise over, to accomplish the general intention of the testator, notwithstanding the express estate for life only, and the inconsistent provision that the issue should take as tenants in common.    We have the authority, therefore, of the court of King's Bench and Lord *Kenyon* himself, that the words " after his decease," of themselves, do not, in a devise of real estate, restrict the failure of issue to the time of the decease.

Since this is the case of *Doe d. Jarrad* v. *Banister*, viz. : " Devise to A. and her heirs, if she has any child ; if not, after the decease of herself and her husband, then to B. and her heirs ;" held A. was tenant in tail.    2 Jarm. 325, cited from 7 Meeson & Welsby 292.    The present is a much stronger case.    To have arrived at the result in that case,

the not having a child, being the contingency on which the property was devised over, must have been considered tantamount to an indefinite failure of issue, notwithstanding the words " after the decease, &c.." The first devise, as in the present case, was in fee.

If, after these decisions and others to the same effect, relating to the disposal of real estate, uncontrolled and unimpugned as they are, negativing the restrictive force of any such words, some one should doubt that the word " after," in a will, may mean " at," " upon," " at the time of," or "immediately succeeding," let him read carefully the account of the first division of real estate " after the flood," in the tenth chapter of Genesis ; and if not satisfied at the end of that chapter, read on in the eleventh, and find out, if he can, about what time that division was made.

Every estate tail includes in it, at least, the estate of the tenant in tail for his own life, and the estate can neither descend, remain over or revert till after his decease, whether there be issue or not. The inheritance in special tail may be determined in the life of the donee, by the decease of the wife or husband, of whose body the heirs are to proceed. See Lit. § 32, 34, and Co. L. 28, a. In that case, he has a freehold during his own life as tenant in tail after possibility of issue extinct. But in every other case the inheritance and estate of tenant in tail, if not legally barred or alienated, continues in him, with all its rights and incidents, among which is the power of alienation by a common recovery, until his decease, though he never has issue nor marries.

The words " after his death," therefore, in the limitation over to the testator's three other sons, will agree with the nature of an estate tail in Josiah, and are necessarily implied in it. They have their use in postponing the estate of the three brothers, and directing with certainty the order and course of succession, which the law adjudges to be an estate tail, first to Josiah and his issue, and afterwards to

the others, and preclude any pretence that the having lawful issue is a condition precedent to Josiah's estate, or that the brothers might enter before his decease, and hold until he should have issue, the will containing no other express reference to his decease.

The settled form of the writ and pleadings in a formedon, is conclusive evidence of the legal construction of the words of this will. Co. L. 11, a. The language is technical and appropriate to an estate tail. The words " which after his decease," technically called the " *quæ post mortem*," in a formedon in remainder or reverter, may apply to a previous tenant for life or in tail, indiscriminately. They are sufficient to show the termination of the life estate and the right of the remainderman or reversioner, but the additional clause, called the " *eo quod*," because the donee died without issue, is used to show that the tail is spent. Fitz. Nat. Brev. 218, B. C. 219, A., note a. 220, E. and notes; Dyer 349, (17.)

In a formedon in descender by an heir, however remote in the pedigree, the writ is thus : " Command A. &c., that he render to B. (one mes. and twenty acres of land, &c.,) which C. gave to D. and the heirs of his body issuing, and which, after the death of the said D. and of E., son and heir of the said D. and of F., son and heir of the said E., ought to descend to said B., son and heir of said F., by the form of the gift aforesaid ;" and so naming in like manner every one in the pedigree to whom the estate or right descended, the demandant making himself heir of the person last seized of the tail and of the donee, this demandant's right accruing after the death of each ancestor in succession, but immediately after the last only. F. N. B. 212, F. G. H. ; 5 Com. Dig. 728; Pleader 3, E. 2; F. N. B. 212 and notes; *Bunkmere's Case*, 8 Co. 88.

And the formedon in remainder is thus : " Which C. gave to D. and the heirs of his body issuing. So that if the said D. should die without heirs of his body issuing, the

aforesaid messuage, &c. should remain to the aforesaid B. and his heirs, or to B. and the heirs of his body, or to J., father to said B., &c., as the case may be, and which, after the death of the aforesaid D. and of J., &c., if ancestral, ought to remain to said B., or B., the son and heir of the said J., as the case may be, by the form of the gift aforesaid, because the aforesaid D. died without heir of his body issuing," &c. F. N. B. 218, B. C. And this is the settled form to show the title of the demandant and the estate tail to be spent, although there may have been ever so many descents from the donee; yet when all issue are extinct, after his decease, he is adjudged to have died without issue, and this " *dying* without issue refers to the estate tail." *Shelly,* J. Dy. 16, § 90; Dy. 216, § 56.

5 Com. Dig. Pleader 3, E. 3, p. 728, " A formedon in remainder must say that the prior donee died without issue," Reg. 239; and *ibid,* 729, " in formedon in remainder or reverter, the demandant need not name the issues of the donee, but it is sufficient to say *eo quod,* the donee died without issue. Dyer 216, a.; *Buckmere's Case,* 8 Co. R. 88, a.

Here, as in the case put by Justice *Shelly,* in Dyer, the words of contingency have reference to the estate of inheritance devised to Josiah Downing, which is cut down and limited to a fee tail by these words, " if he should not have lawful issue after his death," &c., tantamount, as has been seen and conceded, to the words " if he should die without issue after his death," &c., technical terms used in the writ and pleadings in a formedon, to express briefly, exactly and with legal certainty the events which must determine an estate tail, and the period when he in remainder ought to have the possession. The law gives one general form, " and *quæ post mortem* of the donee ought to remain or revert, &c., *eo quod* the donee died without issue," &c., which seems equally well, whether the reversion or remain-

der falls on the decease of the donee himself, or of any future generation, however remote.

There being nothing in this will to restrict the words " should not have lawful issue," &c., from their broadest general and legal import, no matter here whether words of limitation or not, as words of limitation, or to show them to be synonymous with children in the strict sense, the limitation to Josiah Downing and his heirs, &c., includes all his issue. The express limitation extends to them, and then, if unqualified, takes in collateral heirs. If used in the contingency as words of limitation, or in reference to the prior limitation and the estate before given, they are indefinite as to time. The devisee has an express inheritance, which, if he dies seized of, intestate, must first descend to his issue, if he has any, whether it be in fee simple or in fee tail, and this excludes all possibility that the issue might take as purchasers.

Here the general intent is apparent; it extends to the donee and all his issue; all are within the scope of the limitation over, and the descent to the heirs might run through all the issue. There can be no question as to the class of persons. Issue is more comprehensive than heirs of the body at any one time. All the issue cannot inherit *simul* and *semel*, but have a capacity to inherit successively in their turn, if they survive, and those nearer in the succession fail. Failure of heirs of the body, general or special, can never happen till issue of the description fail, and then it must happen for want of persons capable. Failure of issue, after the decease of the donee, and failure of heirs of his body, mean precisely the same thing, but " issue," whether the parent is living or not, includes all offspring, none of which are comprised in " heirs of the body," while the parent is living, or other issue nearer in the succession.

Supposing that a devise to A. and his heirs, and if he shall not have issue, to B., and his heirs intended to give A. an estate tail, there being no other words referring to his de-

cease in the limitation over, such as " if he die without issue," these words " after his decease," seem the more appropriate to supply them.

If the will limits an estate to the devisee with remainder over, the words " after his death," as well as the contingency of marriage, though not expressed in the will, must be there in sense, being necessarily implied and understood, and, if the will without them would be sufficient to limit a fee tail, their insertion can make no difference.

After the observations of Chancellor *Kent,* in *Anderson* v. *Jackson,* 16 Johns.400, 401, and the often reiterated expression of juges that "issue" is *nomen collectivum,* and extends to and *ex vi termini* comprehends all lineal descendants to the remotest generation, it may well be questioned whether, in common parlance, according to the ordinary idiom and construction of the English language, the words " die without issue," or the like expressions, indicating a failure or want of issue, are limited to the time of the ancestor's decease, or whether the testator's using such general expressions without any clear and express qualification and restriction or necessary implication to that effect, so understand them.

It seems the height of absurdity to suppose that a legally settled and technical use and interpretation of words should have obtained and been adhered to for ages, in original formed writs and legal proceedings and in conveyances of estates, as well by deeds as by last wills, which concern every man's title, against the propriety of language and the common sense and understanding of mankind, and, in a great proportion of cases, contrary to the actual meaning of the parties using such language. The truth cannot be so. And an appeal is made with confidence to the observation and recollection of every intelligent person, whether he has known the word " issue," as a colloquial word, much used in familiar conversation, or even in books, and synonymous with children, in the strict sense, or any where else except in law books and among lawyers, or in wills, conveyances,

instruments and legal proceedings in relation to descents or limitation of estates. Who ever heard a mother talk of her issue? Children, family, offspring, descendants, posterity and a great many other words are much more common. Issue is a verb, or verbal noun, somewhat artificial and technical. 2 Co. Inst. 332. The Statute of Westminster 2 d. c. *de donis*, uses the word both as a noun and a verb, in relation to gifts in tail, speaking of a gift to one and the heirs of his body issuing, and of the failure of issue, and disinheriting the issue, treating the failure of issue and of heirs of the body as the same. It literally signifies to proceed from or out of, *to go forth*, and, as an abstract *noun*, a going forth. The common translation of the Bible uses it two or three times, evidently borrowed from the language of the law, and always in its technical and comprehensive sense. In the case in Matthew of the seven husbands who left no issue, (ch. 22 : 25,) the same word in Mark is rendered seed, (12 : 20,) which, as every one knows, is the common expression in scripture for offspring, and takes in all posterity.

The prophesy of the sons of Hezekiah, "that should issue from him which he should beget, who should be captives in Babylon," related to a remote future generation. 2 Kings 20 : 18 ; Is. 39 : 7 ; and the word " issue," in Genesis 48 : 6, has a relation to the inheritance of the twelve tribes or families of Israel, and in a previous translation is rendered " linage," a word near akin to house and lineage in Luke 2 : 4 ; and, perhaps, a juster definition of the general sense of the word could not be given than that it is " a continuing succession of lineal descendants to inherit." All this, at least, is involved in the technical and proper use of the word in a limitation of real estate, and is naturally suggested to the mind of the person who uses it in any conveyance. Then let either of these equivalent phrases be substituted : if he shall not have a continuing line of descendants, or, if he should die without a continuing line or succession of descendants,

on failure of his lineage, after his decease, his estate shall go over; and there is no rule of grammatical construction and nothing in the idiom of the English tongue, which could be thought to tie up the failure of issue to the lifetime of the ancestor, or to the instant of his decease.

Notwithstanding the use made by Lewis of the expression " after his decease," in a devise over, he lays down the rule (p. 195) in these very terms: " It is an undeniable rule of law that a limitation over, after the death of a person without leaving issue, unaccompanied by any restrictive expressions or circumstances, imports an indefinite failure of issue," and in this position he is sustained by all the authorities. This being the general rule and legal construction of the words, is to be adhered to, and limits an estate tail, notwithstanding the expressions which have been objected, which, as has been sufficiently shown, as well from the reason and nature of the cases, as adjudged cases, can have no such restrictive operation to confine the failure of issue to the death of the donee, but, on the contrary, are contained and necessarily implied in the very nature of the entail, and the technical and precise language by which it is described in writs and legal proceedings. The unavoidable consequence is, that unless there is something else to restrict the contingency, the only way in which the devise over could take effect must be as a remainder expectant on an estate tail, limited to Josiah by the inheritance first given him, and this contingent devise over on his dying without issue. The contingency is clearly too remote to limit by way of executory devise, being an indefinite failure of issue.

An estate of inheritance was given by the will to Josiah, the son, in the first instance. In every case the original devise remains in force till the title of the substituted devisee is complete. 1 Jarm. on Wills 756.

Mr. Hayes, in his treatise on disposing of real estate, (vol. 7, Law Library, Elementary Essay, &c., prop. xxv, 47,) justly observes: " The safety, nay, the very existence of the

power of testamentary deposition demands that words should not be diverted from their appropriate sense, unless the will itself enjoin their reception in another sense, and not merely in another sense, but in another given sense as clearly affixed to them." Much more to the same effect, and that the appropriate sense of such words as in this will is to create an estate tail, and to limit to issue to the remotest generation, may be found in that treatise, and the authorities there referred to, for which see further in Elementary Essay, &c., prop. xxi, 35, 36; prop. xxiii, 41, 42; gifts to heirs special, &c., prop. xiv, 8, 15; prop. xv, 17, case No. 60, in table iii ; *King* v. *Melling*, 1 Vent. 225, &c.; Lords *Eldon* and *Redesdale's* opinion in *Jesson* v. *Wright*, 2 Bligh 49, 52, 56, 57. Also Lord *Denman's* opinion in *Doe* v. *Gullin*, 3 Barn. & Ald. 610.

As to motives of convenience, which have been suggested to influence a restricted construction, in the absence of direct authority or under contradictory decisions, this will presents no such case. So far as regards this will of real estate, the cases are all one way, and give the legal construction of an estate tail; and if it were not so, here is no such ground of convenience for an executory devise, of which the law or the court can take notice.

It is not disputed that a testator may, if he chooses, give by way of executory devise under certain limitations imposed by law. Within these he may give his property on the most capricious motives, and on almost any condition, not unlawful, as tending to crime or some public mischief. It may be a voluntary act, as the payment of money, a mere accident, a trial of skill or power, or any lawful wager, the event of a horse race, if he pleases. And it is equally true that he may, if he please, entail his estate or devise it to go in such order and course of succession as the law adjudges to be an entail, and clothes with the legal incidents of an entail. The law recognizes either mode of disposition as valid, such as a man of sane and disposing mind may

make. Such motives of convenience as surmised are, at best, very problematical. How proper soever these may be for the consideration of the testator himself, yet the disposal being left to his choice, this matter of convenience affording " no recognized principle of construction in any of the cases," is a subject solely for the exercise of his own discretion, but rather too copious to·be addressed to the discretion of a court, to affect the legal interpretation of his language. Courts, it is presumed, will take the will of a testator to be as he makes it, according to the legal meaning of his own words, when it is made. The meaning is, then, *fixed*, and cannot be changed by after events, to suit the convenience of any party. This will is to be construed as it should be if the devisee, never having conveyed in his lifetime, had left issue surviving him since extinct, and these plaintiffs were now pursuing their formedon in remainder, in legal form as before stated, against his devisee or the heir of his issue, in which case the allegation of the gift in tail, in the writ and count, would be fully maintained by the words of this will, and we should hear nothing of the restricted construction.

All the cases referring to a charge of money in a devise of land having any effect to restrict words importing a failure of issue, are of charges on the ulterior devise, made or supposed to be intended to be payable at a definite period, within the legal limits of an executory devise, as in the lifetime of some certain person living at the testator's decease, or at or within twenty-one years, &c, or a shorter period after his decease or the like, and so limiting the contingency on which such devise is to take effect to the same period, and excluding an indefinite failure at a future time ; a present absolute charge of money on an estate, which, itself, depends on a remote future contingency not being supposable. It is not repugnant to the nature of an estate tail itself to be charged with payments, or absolutely so even to a life estate; and there are cases of such charges to be

found in the books. See for life estate, Shep. Touchst. 439, and Dyer 126. And for estates tail, Cowp. Rep. 410, *Den* v. *Shenton*, and *ib.*, 833 ; *Doe* v. *Fyldes* and S. C. 838, Lord *Mansfield*, and *Tenny* v. *Agar*, 12 East 253.

Yet in case the devise is general and not expressly for life, the charge is an argument of a fee. Cowp. 841 ; 3 Com. Dig. 423 ; Devise, N. 4 ; Shep. Touchst. 439, and notes 3, 4.

But in a question between an estate tail and an executory devise, the argument of the charge is in favor of the entail. For an estate in fee, subject to an executory devise, while the ultimate fee remains in contingency, is as unavailable as a mere life estate to sustain the charge, whereas the tenant in tail may help himself by barring the entail ; and when the testator imposes charges which may greatly exceed the annual value, it is to be presumed he had in his mind this resource, should it become necessary, and that he intended an estate tail. And this may satisfactorily account for the charges of money in favor of the three devisees, and of the support of his imbecile son, David.

It may have been sometimes suggested in argument that the words " assigns forever " should influence the construction of a fee simple, but never, it is believed, with success, unless in *Fosdick* v. *Cornell*, where Mr. Justice *Thompson* went so far as to intimate pretty strongly that to create an estate tail the testator ought to do it in direct terms, in one clause or sentence, objecting to the detached situation of the clauses, and disregarding the general rule that the construction should be on the whole will. Both those words have no effect in regard to the limitation of the estate in a deed, as may be seen in the first section of Littleton Co. L. Neither nor both of them will enlarge an express life estate to an estate of inheritance in a will. If the devise be general, and nothing else is repugnant, both together or " forever " alone may do it, but " assigns " cannot. The words are not wholly repugnant to a particular estate. There are

numerous instances of estate tail limited to a man, " his heirs and assigns forever," followed by a devise over on his death, without issue. Such are the cases of *Doe* v. *Ellis*, 9 East 382; *Roe* v. *Scott*, Fearne's C. R. 473, note-; *Blessard* v. *Simpson*, 3 M. & G. 929, cited in the argument for the plaintiffs.

That there are intervening clauses in the will between the devise to Josiah and his heirs, and the limitation over to his three brothers, can make no difference. The whole will should be taken together, and the clauses construed the same as though they be stood in juxtaposition. This is well expressed by Chief Justice *Shaw*, 15 Pick. 112. It is a " well known rule of construction that every clause and word in a will are to be taken together, however detached from each other, to ascertain the intent of the testator."

The same principle is also exemplified in *Wealthy* v. *Bosville*, cited by Mr. Fearne from Rep. Temp., Lord *Hardwicke*, in B. R. p. 258, a strong case in favor of an estate tail. J. C. R. [300,] 387.

There was a devise to two daughters and their heirs, in case T., a son, should not marry and have children, and if both daughters should die without being married and having children, that all his estate should descend to J. M., a nephew of the testator; and at the end of the will, he gave to his son T. all his estate, real and personal, not disposed of by his will. The testator died. T. entered and suffered a recovery to use of himself in fee, and died without issue, upon which his sisters entered and suffered a recovery and died without issue, on which the heir of J. M., the nephew, entered. The question being whether the devise to the nephew was a remainder depending upon a particular preceding estate to the son and daughters or an executory devise, it was contended that if the son took any thing by the will it must be an estate tail; but this could not be for want of express words, and there was no necessary implication. But Lord *Hardwicke* was of the opinion that there were

two rules, which went a great way in determining the case ; first, that it is immaterial which words came first or last, for the construction must be made upon the whole will.  Rule 1.  Secondly, that no limitation shall be construed to be an executory devise, if it may be a remainder.  Rule 2.  That here in the subsequent part of the will was an express devise of all the residue, so that taking the two clauses together, here seemed to be an express devise to the son, and it was given by the word estate, which was sufficient to carry the fee ; so that it amounted to a devise to the son and his heirs, and if he died without issue, remainder, &c., and that was nothing but an estate tail ; but if that were not so clear, yet as to the daughters, he thought no objection could be raised, for there was a devise to them ; and if they died without children, &c., so that their recoveries at least were sufficient to bar the nephew's remainder, and judgment was given accordingly.

In looking at that case, it may be noticed, by the way, that the phraseology creating the contingency on which the estate was to go over to the daughters and nephew, was very similar, and the same, in effect, as " should not marry and have lawful issue," in the present will.  The fee being given to the son and daughters and nothing to their children, " children " could not be words of purchase, but of limitation, the same as " issue."

An objection has been started that the devise over to the three brothers, as tenants in common, is inconsistent with the course of descent under an estate tail, and tends to show that issue in the will is not used as a word of limitation, but means children, tenants in common.  This objection has at least the merit of novelty.  It has before sometimes been contended, in cases of a limitation to issue, or children, after a devise to a parent in the same will, that these could not take by descent, in the course of an estate tail, where there were such words of distribution amongst them as tenants in common.  See *Doe* v. *Cooper*, super, devise

to issue as tenants in common. But the mode of enjoyment, by the ulterior devisees, does not concern the issue nor the prior estate tail of Josiah Downing. These devisees over are not pretended to have an estate tail. And on no construction of the will could the issue take as purchasers. Nothing is given to the issue of Josiah Downing, jr., excepting under the words of limitation in the first devise, " his heirs," which it will be hard to twist into words of purchase; nor is a tenancy in common amongst the issue, or any other mode of enjoyment by them pointed out in the will.

A donor having limited an estate tail, may carve out, grant or devise the remainder in as many estates, parcels or portions to or among a sole tenant, joint tenants, or tenants in severalty or in common, as he pleases, until the whole premises and the whole estate and fee simple are disposed of, in the same manner as he might limit the premises immediately, if there were no such previous entail. If cases were needed, *Barlow* v. *Salter*, 17 Ves. 479, may be referred to, as well as *Gale's Case*, decided in this court, July term, 1848, in which there was a similar devise over to tenants in common.

The application of the cases cited for the plaintiffs to this point has been wholly misapprehended.

There is no ground for the original exercise of the equitable jurisdiction of the court. No discovery is sought, no concealment alleged, and no fraud, accident or mistake, such as to authorize the interference of a court of equity, and there is no apprehended irreparable mischief to be enjoined against till a legal decision. But the case presents bare questions of law on the effect and legal construction of words in a conveyance and on the operation of a statute.

The equity jurisdiction of this court is as distinct from its ordinary jurisdiction as a court of common law, as though the two were exercised by different judges. The two jurisdictions are not to be confounded. Courts of equity have

no recognizance of such mere questions of law, unless incidentally to the exercise of their equitable powers on other grounds. No bill lies to obtain the opinion of a court of equity, on questions of the legal construction of an instrument. Besides, this is not among the enumerated cases of equity jurisdiction in the statute, but is excluded by the words " where there is not a plain, adequate remedy at common law," which apply not only to the instance of secreting property, but to all others. This exclusion has been inserted in former statutes, it is recognized in the constitution of courts of equity in England, and is implied to be understood in the Revised Statutes. Otherwise, all lawsuits may be tried by proceedings in equity and the common law courts would be useless. *Manning and ux.* v. *Dennis*, Hob. 202.

As to the merits of the decree on the construction of Downing's will, the devise to Josiah expressly gives him an estate of inheritance. It is limited, in the first item, only to him and his heirs and assigns, and is not capable of being explained or restricted by a habendum, or any subsequent clause, to mean merely an estate for his own life. The words, without any other clause, import an absolute estate in fee simple. The words " his heirs " are proper and technical to limit such an estate.

There are two ways only in which, without revoking the will, the same premises may be devised over to another, using a restriction or explanation of these words, without being wholly repugnant to their effect.

The first is by a gift over to another, on failure of issue or heirs of the body, general or special, of the donee, whenever it may happen, at or after his death, unaccompanied by other qualifying circumstance or contingency. This, it is contended, is the effect of the words " if my son Josiah should not have lawful issue of his own body," in the limitation over to the three brothers, which restricts the general meaning of the words " his heirs," in the first clause, and

the descent of Josiah's estate to his heirs of his body, begotten in the same way as if these words " of his body begotten," had been added in the first clause, and so creates an estate tail, a particular state of inheritance, leaving a remnant of the fee which passes by way of remainder by the devise to the three brothers. A springing use or devise over, to take effect on a failure of issue, at or within a limited time or on a collateral contingency, would not be sufficient to cut down the fee, before given to Josiah, to an estate tail, as it would not necessarily exclude the collateral or general heirs of the donee, and confine the descent to his issue, unless the failure should take place within the time specified, or the other contingency should happen, but his collateral or general heirs might inherit in fee simple, and no estate tail would be implied, and no remnant would be left to pass the devises over as a remainder.

Secondly. If such conditional limitation is so framed, that it must take effect, if at all, within the compass of the life of some person mentioned in being at the death of the testator, and twenty-one years and a period or two of gestation afterwards, it may be a valid springing use or executory devise, which, on the happening of the contingency, would displace and defeat the prior estate, by passing the property to the devisee over. Otherwise, (no estate tail being limited,) the contingency is too remote, and the limitation over, therefore, void, and the prior fee simple remains absolute. It is in no case disturbed, unless the substituted executory devise becomes effectual and executed. 1 Jarm. 750. In every instance, the original devise remains in force till the title of the substituted devisee is complete.

Supposing the contingency, in the present case, to be so restricted to the time of the donee's decease as to limit a valid executory devise to his brothers, it becomes material to consider, first, what the contingency is; second, whether it has happened; and third, whether it has become effectual to vest the estate devised over.

The contingency itself may be in the copulative or dis-
junctive " and " or " or." Should not marry [and—or] have
issue, &c. If the want of lawful issue is to entitle the de-
visees over, there is no object in mentioning marriage. It
is merely nugatory. To give it effect, the contingency
should be rendered disjunctively, and then, if J. D. should not
marry or have issue, that is, have issue, or at least be mar-
ried, then the estate would go over to the brothers, but
otherwise, if he married, the estate would become absolute
in Josiah.

This construction, if the contingency is restricted to the
time of the decease of the donee, seems most conformable to
the probable intent of the testator, and, if adopted, would
save the property to Josiah, his heirs and assigns, for that
he did, in fact, marry is not disputed.

On the construction of an indefinite failure limiting an
estate tail, one-third part of the remainder expectant vested
in each of the brothers, who survived the testator. The third
part devised to Joshua, who died in the testator's lifetime,
might vest in his children living at the testator's decease,
by force of the statute of 1789, for settling testate estates,
which, in such case, would save it to them from lapse, if any
estate would then have vested in their father surviving either
in possession or as a reversion or remainder. The children
or issue might take it as purchasers under the statute. 7
Mass. Rep. 87. This remainder of one-third expectant on
the estate tail would be an estate which Joshua would
have taken, if he had survived, and might legally dispose of
by devise, grant or other conveyance, and would pass under
general words as such. Lord *Mansfield*, Cowp. Rep. 363,
365; 4 Com. Dig. Grant, E. 2; 3 Bac. Ab. 396; 2 Black.
Com. 106, 115, 167, 171, 175; Fitz. N. Br. 218, D.,
219, E.

But taking this as an executory devise, and the failure of
issue of Josiah to be restricted, Joshua would have had
only a contingent interest or possibility, on his surviving the

testator, not legally assignable, which would not pass by any general words, in a conveyance of his estate, until the contingency should happen on which it was to vest; and so this executory devise (if it be one) does not come within the purview of that statute, but has lapsed by the decease of Joshua, in the lifetime of the testator, and become ineffectual to vest any estate so as to displace the fee given to Josiah.

In considering the construction of this will, it may be premised that whether it limits an estate tail with remainder over, or a fee simple, subject to an executory devise, in either case the limitation to the devisees over cannot take effect before the death of the first devisee. If it be an executory devise, the words " after his death," exclude any earlier commencement of their estate. An executory devise might have been so limited as to be capable of taking effect in the lifetime of the first devisee, as if it had been on the contingency that he should not marry under such an age, or limited time, or have a child born in so many years, and then the utmost limit would be when a posthumous child could be born, and the contingency might be determined so as to divest his estate and execute the devise over in his lifetime.

But if the will limits an estate tail to Josiah, not only the words " after his death," but the nature of the estate itself excludes any remainder over before his death. What is an estate tail? It is at estate limited to a person and his heirs of his body begotten. The heirs or issue must take by descent, and this cannot be in the lifetime of their ancestor. He has all his heirs in himself, and holds the whole estate during his lifetime. It is his estate of inheritance, which may and will continue after his decease, so long as there shall be any heirs of his body, any legitimate lineal descendants. Tenant in special tail may be reduced to a tenant for life only under the name of tenant for life, after possibility of issue extinct; but not so with tenant in tail general, as this case is. The entail cannot be spent before his

decease, and it can neither descend nor remain over in possession till then.   It is spent by the total failure or extinction of issue to inherit, whether at or in any future time after the death of the donee, and then, that is, when the donee himself, and all his descendants (if he had any) are dead, the remainder falls in possession, like any other remainder or reversion, after an estate for life or years.   It is no more void for remoteness than any remainder on a term for life, or fifty or twenty years.   This case presents no question of the devise over being void for remoteness of the contingency.   Such a question cannot apply to a vested remainder. There is no pretence for it.   If the estate tail is not legally barred, as it may be by a recovery, &c., it will descend according to the form of the gift from the donee to his issue till all are extinct till the remotest generation, and the estate tail is spent, each successive tenant, during his time, having the same estate, and the same power over it as the original donee had, and no more ; and then the premises may be entered on and taken possession of, or recovered in a writ of formedon by him having the reversion or remainder, his heirs or their grantees, at whatever distance of time.   It is a mistake to call a limitation over following an estate tail, (no matter how created in the same conveyance,) an executory devise, springing use or any such thing ; it is a remainder, vested or contingent, and nothing else ; it may be barred by recovery or otherwise, but no objection of remoteness holds against it.

As to an executory devise, it is admitted only from necessity, not when the will may take effect in any other way.   3 Com. Dig. 450 ; Devise, N. 17.   That shall not be construed an executory devise which may take place as a remainder.   *Purefoy* v. *Rogers*, 2 Saund. 388.

The material and operative words of the will, which limit the estates of the devisees in the premises in question, are contained in two items :

The first, omitting what is irrelevant or superfluous, has

these words: " I give and devise unto my son, Josiah Down-
ing, all my lands in Newington, &c., &c. * * * * all to be
to him, his heirs and assigns forever." These words give
Josiah an estate of inheritance at least. The words " his
heirs" are words of limitation, and can be satisfied with
nothing less, neither can they be rejected. Any habendum
or other subsequent explanation or restriction, which should
attempt to reduce his interest to a mere life estate, would
be repugnant and void. To do this would require a clear
revocation and a new devise. The words of this item,
standing by themselves, would confer an absolute estate in
fee simple. The subsequent item has these words : " My
will is, that if my son, Josiah, should not have lawful issue
of his own body, all the real estate that I have given him
shall be equally divided between his three brothers, Joshua,
Samuel and Ebenezer, their heirs and assigns forever."
These are all the words supposed to be material, and it is
to be considered, first, what is their legal effect to limit either
an estate tail with remainder over or a fee simple, subject
to an executory devise ; and then, whether there is any
thing else in the will to control the effect of these words by
manifesting a different intention.

If the contingency which gives the estate to Josiah's
brothers is simply a failure of his issue, either at or in any
future time after his decease, whenever it may happen, in-
definitely, it will not, I suppose, be denied that it cuts down
and limits his inheritance from a fee simple to an estate
tail, and then the interest of the brothers is a remainder,
which must be barred by a recovery.

The position is that the words, in legal construction, im-
port a failure of issue indefinitely, and limit and estate tail.

It is plain that, on any construction, the contingency can-
not be legally determined in favor of the devisees over in
Josiah's lifetime. So long it must wait to give them the
property. The law judges it possible, so long as he lives,
that he may marry and have issue, and then, at his decease,

the estate, whether in fee simple or tail, would descend to his issue, if he had any. The words " if he should not have issue," are equivalent to saying " if he should die without issue," and so limit an estate tail. *Sonday's Case*, 9 Co. 128. The words " if he die without" express the death of the donee as an essential circumstance of the falling of the remainder. The words as stated, " if he should not have issue, * * * * all, &c., * * * * shall be divided," sufficiently imply the same circumstance. But if it is not so, the other words, " after his death," are proper to supply this defect, and they *do nothing more.*

The estate, on any construction, is not intended, in any event, to go to Josiah's brothers, during his lifetime; it certainly cannot if his estate is in tail.

*Emery*, for the plaintiffs.

The questions, in this case, arise upon the bill and the demurrer thereto, and the plaintiffs make the following points :

1. The will of Josiah Downing creates an estate, by the way of an executory devise in his sons Josiah, Joshua, Samuel and Ebenezer, and the heirs of the three last above-named, not subject to the deed of Josiah Downing, the son, unless he married and had issue of his body. The first clause of the will wherein Josiah Downing is named, clearly and distinctly gives him a fee in the property devised. The other clause is as follows : " My will is, that if my son, J. D., should not marry and have lawful issue of his own body, after his death, all the real estate which I have given him shall be equally divided among his three brothers, Joshua, Samuel and Ebenezer, their heirs and assigns forever." Do these words import an indefinite failure of issue, or a failure of issue at the time of the decease of J. D., the son ? If the former, his estate was an estate tail; if the latter, it is an executory devise. The plaintiffs contend that the tes-

tator had reference to a failure of issue living at the death of J. D., the son.

It is conceded that it is well settled that expressions referring to a dying without issue of a person, whether the term be " if he have no issue," " if he die before he have any issue," " if he die without issue," " for want," or " in default of issue," or " if he depart this life without issue lawfully begotten," or " if he die without any child or children," where there are no words or clauses explaining or qualifying them, are construed to mean an indefinite failure of issue, and the devisee takes an estate tail. 2 Powell on Dev. 564; *Doe* v. *Ewart,* 7 Ad. & E. 636; *Doe* v. *Simpson,* 3 Mann. & Gr. 929. There are, however, numerous cases in which the general words, or the words importing a failure of issue, have been restrained to issue living at the death, and they have been thus classed.

1.   Where death is confined to a given age, as where the devise is to a person and his heirs, with a limitation over, if he shall die under twenty-one and without issue. This is construed not an estate tail, but a devise in fee, subject to an executory limitation over, in the event of the devisee leaving no issue surviving him. 2 Powell on Dev. 573, and cases there referred to and commented upon. 1 Powell on Dev. 187, 188, note; 2 Jarm. on Wills 428, 429. *Hamer* v. *Sheets,* 2 Binney 532, comes under this class. The devise was to the testator's son, his heirs and assigns forever, and he ordered that, in case his son F. should die under the age of twenty-one or without issue, his share in the estate of the testator should go to P., his heirs and assigns. So is the case of *Holmes* v. *Holmes,* 5 Binney 252, where the devise was in words similar, almost identical. In the case of *Dallam* v. *Dallam,* 7 Har. & J. 220, the devise was to R. and J. as tenants in common, " but if either of them dies before twenty-one and without issue, then I will that one equal half part of said land be held and enjoyed by G., his heirs and assigns." In *Ray* v. *Enslin,* 2 Mass. Rep. 554, the de-

vise was to the wife of the testator for life, and after her death to the daughter of the testator, her heirs and assigns, but in case the daughter should happen to die before she came of age, or have lawful heir of her body begotten, then over.

In the case of *Saywood* v. *Saywood*, 7 Greenl. Rep. 210, the devise was to S. provided and on condition he lives to the age of twenty-one, and has issue of his body lawfully begotten; but in case he die under twenty-one, and without issue living, his brother Ebenezer, then to E., his heirs and assigns forever. In *Barniby* v. *Casey*, 7 Cranch 456, the devisee was to A. in fee, and if he die under twenty-one and without issue, to B. in fee.

In *Lippet* v. *Hopkins*, 1 Gall. 454, the devise was to A., and if he shall die without an heir before twenty-one, then all bequeathed to him to be equally divided among his brothers and sisters and their heirs. In *Jackson* v. *Blansham*, 3 Johns. 292, the devise was, " I give, devise, &c., to my six children, their heirs, &c., all the remainder of my estate, real and personal, which is to be equally divided between them, share and share alike ; but if any one or more should die before they arrive to full age, or without lawful issue, then his, her, or their part shall devolve upon and be equally divided among the rest of my children, their heirs and as- signs forever." A testator devised his estate to his wife for life, his child or children in fee. If no child should live until twenty-one years old, then his estate was to be equally divided between the children of S. & of W. *Wells* v. *Ritter*, 3 Whart. 208. A devise to A. and her heirs forever, but if she should die before she arrives at lawful age, and has heirs lawfully begotten of her body, then to B., is a fee simple to A., with an executory devise over to B., and not an estate tail. *Doe* v. *Roe*, 1 Harring. 475. Such was the decision in all the above-named cases.

2. Where expressions are added to the words used by the testator, showing that he used them in a restricted sense.

In *Doe* v. *Malton*, 2 Bos. & Pul. 324, the devise was to S. S., her heirs and assigns forever, but if she shall happen to die leaving no child or children, lawful issue of her body living at the time of her death, then to F. B. and his heirs. In the case of *Pells* v. *Brown*, Cro. Jac. 590, the devise was to Thomas, second son of the devisor, and his heirs forever, and if he die without leaving issue living, William, his brother, then William shall have the land.

In *Porter* v. *Bradley*, 3 D. & E. Rep. 143, the words were " to P. D., his heirs and assigns forever, and if he happen to die leaving no issue behind him, then to my said wife."

In *Langley* v. *Heald*, 7 Watts & Serg. 95, there was a devise to the testator's son in fee, and in case the son should die leaving no issue, then to his daughter, if she be living, her heirs and assigns.

3.   Where he to whom the devise over is given is charged with the payment of money, after the death of the first taker, is an instance shown in the case of *Nicholas* v. *Hooper*, 1 P. Wms. 198.   The devise was to M. for life, remainder to the son T. J, and his heirs and assigns; if T. J. should die without issue of his body, then the testator gave £100 apiece to A. & B., to be paid in six months after the decease of the survivor of mother and son.   In *Doe* v. *Webber*, 1 Barn. & Ald. 713, was a devise to M. H., and her heirs forever, and in case M. H. should happen to die and have no child or children, then to J. B., she paying £1,000 to the executor of M. H.

In the case of *Doe* v. *Frost*, 2 Barn. & Adol. 546, the devise was by testator to his son, W. F., provided W. F. should have no children, child or issue, the estate was, on decease of W. F., to become the property of the heir at law, he paying such legacies as W. F. might leave by will to any of the younger branches of the family.

4.   When the devise over is to a person for his life only. In *Roe* v. *Jeffrey*, 7 D. & E. 585, the devise was to F. F., his heirs and his assigns forever, and in case he should de-

part this life and leave no issue, then to E. M. and J., or the survivor or survivors of them, share and share alike, first going to W. A. for life.

In the case of *Trafford* v. *Buchan*, 3 Atk. 449, the testator gave all his real estate to A. for life, without impeachment of waste, and after her death and failure of issue by him, and payment of debts, to his sister T. H. for life, with remainder to several other persons for life, remainder to his own right heirs.

See *Hodgson & al.* v. *Bussy*, 2 Atk. 89, and *Drury & al.* v. *Grace*, 2 Har. & John. for the following: " I devise the whole of my property to my daughter and her heirs forever; in case she dies without issue, then the whole of my property is to be possessed by my wife during her widowhood, and no longer, and at her death or marriage, to be sold at public auction, and the money arising therefrom to be equally divided between H. C. and N.

In *Moore* v. *Howe*, 4 Morr. 199, the devise is to a daughter, and if she die without issue, to the widow for her life, and at her death, leaving no issue, to his neices.

5.   A further circumstance to which a restraining power has sometimes been attributed, in regard to the character or extent of a failure of issue, is that of a gift over being to the survivor or survivors of a class of persons on the death without issue of one or more of the members of the class. The case of *Radford* v. *Radford*, 1 Keen 486, was a devise of freehold and leasehold estates to A. & B., as tenants in common, and if either of them should die without leaving issue, then as to the share of such of them as should so die without issue as aforesaid to the use of the survivors of them.   This was held a good limitation over as an executory devise.   In the case of *Richardson* v. *Noyes*, 2 Mass. Rep. 56, the devise was, " I give unto my three sons all my other lands, &c.; also my will is, if either or any of them should die without children, the survivor or survivors of them to hold the interest or share of each and any of them so dying ;

without children. In *Fosdick* v. *Cornell*, 1 Johns. 440, a testator devised his real estate to his four sons and a daughter, and adds : " Further my mind and will is, that if any of my sons or my daughter shall happen to die without heirs male of their own bodies, that then the lands shall return to the survivors, to be equally divided between them."

The case of *Jackson* v. *Staats*, 11 Johns. 337, was settled by the same reasoning of the court, though it related only to personal property. E. devised a farm to his son Joseph, his heirs, &c. forever, and another to his son Medcef, his heirs, &c., and added : " It is my will that if either of my said sons depart this life without lawful issue, his share or part shall go to the survivor." *Anderson* v. *Jackson*, 16 Johns. 382 ; *Leon* v. *Burtis*, 20 Johns. 483 ; *Wilkes* v. *Lion*, 2 Cowen 333 ; *Jackson* v. *Chew*, 12 Wheat. 153. A. made his will, and gave his estate, real and personal, to his four children, in nearly equal portions, and then added : " It is my mind and will that if any of my children shall depart this life without issue of their body or bodies lawfully begotten, that the share or portion of such, so departing this life, shall be equally divided between the surviving ones, share and share alike." *Jackson* v. *Thompson*, 6 Cow. 178. In *Jackson* v. *Christman*, 4 Wend. 277, is found the following : " I give, devise and bequeath unto my six sons, &c., all my real and personal estate, to hold to them, their heirs and assigns, and if any of the above six should happen to die without heirs, then his or their share shall fall to the survivors of the above-named sons, share and share alike." See also *Heard* v. *Horton*, 1 Denio 165. In two cases in Connecticut, the courts appear to have adopted the same construction.

In *Morgan* v. *Morgan*, 5 Day. 517, a testator devised his real estate to his four sons, and if either of his sons should die without children, his brothers should have his part in equal proportions. In *Couch* v. *Gorham*, 1 Conn. Rep. 36, a devise was to the three sons and two daughters of the tes-

tator, with this clause : " And my will further is that if either of my sons die without issue, then and in such case the share given to such deceased son shall go and vest in his surviving brethren and those that legally represent them. In *Den* v. *Allaine,* 1 Spencer 6, a testator devised distinct tracts of land to his three sons, and added : " And it is my will that if either of my sons before named should die without issue, that his share be equally divided between my surviving sons." In *Southerland* v. *Cox,* 3 Dev. 394, is a devise to two, but " if either of them die leaving no issue, the whole to go to the survivor." This is a good executory devise. It was also so held in the case of *Coates* v. *Street,* 2 Ashmead 12, where A., by his will, devises all his estate, real and personal, to his children, B. C. D. E. F. and G., their heirs and assigns forever, to be equally divided between them, share and share alike, with a proviso that if either of them should die intestate, unmarried, and without issue, and without having disposed of his or her share in the estate, that the part or share of him so dying shall go to be equally divided between the surviving children, part and share alike.

These cases are not directly in point, but they show most conclusively that the object of the courts has ever been to carry into effect the intention of the testator ; and to ascertain that intention, they readily lay hold of any and every expression in a will which has a tendency to show that the testator did not mean an indefinite failure of issue. These cases also show that this disposition has been equally strong in this country, and, in some instances, much more effectual than in the English courts, to sustain the limitation over as an executory devise. 4 Kent's Com. 278. If the subject-matter in Downing's will had been personal property, the words " after his death " would have controlled the expression " issue of his body," and would have restrained the failure of issue to the time of the death of J. D., the son. *Pinbury* v. *Elkin,* 1 P. Wms. 563 ; *Stratton* v. *Payne,* 3 Bro.

P. C. 99; *Mother* v. *Oswald*, 1 Cox 317; *Barkstron* v. *Vile*, 1 Sim. & Stew. 604; *Wilkinson* v. *South*, 7 D. & E. 551. It is said in Lewis' Law of Perpetuities 234, if land be devised to A. in fee, and if he die without issue, then at or after his death to B.; the words " after his death " seem with sufficient certainty to point to the death of the first taker as the time at which the failure of issue contemplated is to be ascertained. Various cases have fully established the force of the words in question, as it respects gifts of personalty, two cases in favor of the same construction where the devise is real estate. *Doe* v. *Frost*, 3 Barn. & Ald. 546; *Robinson* v. *Grey*, 9 East 1. Mr. Justice *Holroyd*, in his opinion, lays considerable stress upon the words " on the decease of W.," the words of the devise in that case, and quotes them as equivalent to " at his decease." Opposed to these authorities are the two following : *Walter* v. *Drew*, 1 Comyn 373, and *Doe* v. *Cooper*, 1 East 229. In neither of these cases does it appear that the question of the force of the words referring to the decease of the ancestor in the gift over was at all presented to the notice of the judges. It should also be borne in mind that in *Doe* v. *Cooper*, the devise was to the first taker for life, and not in fee. No person can read the case without being satisfied that this circumstance had a great influence upon the decision of the case. How it was in *Walter* v. *Drew* does not appear from the report. *Dunk* v. *Fenner*, 2 Russ. & Myl. 557, Lewis considers as contradictory in itself, and of no authority upon the question. Lewis' Law of Perpet. 200–238.

Mr. Prior, in his treatise on Issue, quoted by Lewis, on page 202 of his book, considers this decision to have been wrong, and says: " The proper decision would appear to have been that the daughter took the real and personal estate absolutely, subject to an executory devise over, on her dying without issue at the time of her death." After a full and complete examination of the authority, Lewis thus sums up : " That the inference arising from such expressions in

favor of a confined signification of words importing a failure of issue, is equally strong, whatever the nature of the subject-matter of the gift, is plain, and it is by no means clear that that presumption will be restricted to limitations of personal property, should occasion arise for an actual adjudication on the question." Lewis' Law of Perp. 240.

In considering our case, the court should advert to the circumstance that there is a distinction between the case where the preceding part of the will gives a fee, and where it gives a life estate only. In the former case, the motive to imply an estate tail is much less cogent, since the alternative construction gives the prior devisee an estate in fee simple, in the event of his having issue, whereby he is enabled to make provision for his issue, if he leaves any, so that the scheme of disposition which is thus imputed to the testator is reasonable, and wholly free from the inconvenience and objection which attach to a similar construction, where the devise is for life only, in which the effect of rejecting the implication of an estate tail is, that in the event of the first taker leaving issue, the property is undisposed of, as it cannot go either to himself, his issue, or the ulterior devisee. 1 Jarm. on Wills 490. In the former case, the convenience is all on the side of the restricted construction. 2 Jarm. on Wills 440, 441; 2 Powell on Dev. 582, 583; Lewis' Law of Perp. 191, 192. Convenience is a principle of legal judgment. Convenience may be used not, indeed, so as to control the law, but as a guide in doubtful cases and on untrodden ground. Convenience ought to turn the scale where there are contradictory cases. Ram on Legal Judgment, and cases there cited.

Another circumstance, which should be taken into consideration, in ascertaining the intent of Downing, is the words "if my son, J. D., should not marry." We have seen that where death is confined to a given age, the limited or restricted construction obtains. It is said the same principle will be considered as extending to every case in which

a dying without issue is combined with an event personal to the devisee, as in case of his dying unmarried and without issue. 2 Powell on Dev. 574; Lewis' Law of Perp. 229. In the case of *Woodward* v. *Glassbrook*, 2 Vern. 388, one devises several parcels of real estate to his sons, J. and T., and the heirs of their bodies, in equal moieties, and adds: "but my mind and will is, that if any of my said children shall die under twenty-one, or unmarried, the part or share of him or her so dying shall go over to the survivors." Held, that if one die over twenty-one, but unmarried, his share shall go to the survivors.

In *Wilson* v. *Bailey*, 3 Bro. P. C. 195, a testator devised leaseholds to trustees, in trust for his son John, until his marriage, and then to make provision for his wife, and if J. should have any issue, then to assign the premises to him, to enable him to make provision for his children; and if J. should happen to have no lawful issue, lawfully begotten, in trust for the testator's son, M., in like manner, it being his intention, that if J. should die before he was married, or if he were married and should have no issue lawfully begotten, then the lands should be enjoyed by M.; and in case both his sons, J. and M. should happen to die unmarried, and neither of them should have any issue over. M. died unmarried; J. married, but had no issue. Held, the devise over took effect, the clause being construed in the disjunctive. The above statement of this case is taken from Lewis' Law of Perp. 229, 230.

How does this case differ from *Downing* v. *Wherrin?* It seems to me that the most ingenious man cannot show there is any difference. This case is followed by *Hepworth* v. *Taylor*, 1 Cox 112, where a bequest over in case the legatees died unmarried and without issue, was held to take effect on the death of one married, but without leaving issue. In *Maberly* v. *Strode*, 3 Ves. 450, where the devise was "to my son Samuel, but in case my son S. aforesaid

shall die unmarried and without issue over, Samuel married, but died without issue. Held, the devise over took effect, the word *and* being construed *or*, to effectuate the intention of the testator. In *Bell* v. *Phyn*, 7 Ves. 453, George, Jane and Catherine were made residuary legatees, the residue to be equally divided between them, share and share alike; and the testator added, " but it is my wish and desire that, in case of the death of any of my children, (without being married and having children,) the share of such child so dying shall be divided among the surviving children, and so if only one of my children should survive." One of the daughters having married and had a child, the court held the share had vested, and confirmed the construction of *Maberly* v. *Strode*.

There is another matter which should be allowed its due weight in the consideration of this question, and that is that the word " issue," in all places and under all circumstances, does not have the same effect that the words " heirs of the body " would have in the same places and under the same circumstances. The word " issue " is a word in ordinary use, not of a technical nature, capable of more meanings than one; and though its *prima facie* meaning may be descendants of every degree, still it readily yields to the intention of the testator, to be collected from the will, and requires a less demonstrative context to show such intention, than the technical expression " heirs of the body " would do. *Lees* v. *Mosely*, 1 Yo. & Coll. 589; 2 Jarman on Wills 347, 348, and the cases there cited and commented upon.

The word " issue " is, technically, a word of purchase, though it may be a word of descent, if such appear to be the intention expressed in the will. Ram on Wills of Landed Property 53, 115, and the cases there collected. Lewis' Law of Perp. 304.

Again, the words in Downing's will, " shall be equally divided between his three brothers," pointing as they do to a

mode of enjoyment inconsistent with a course of descent·
under an estate tail, have a strong tendency to show that
Downing used the word " issue " in his will, in its ordinary
and popular signification, and not as a word of limitation,—
that he meant children.    *Yarget* v. *Garnet*, 2 Jarm. on Wills
432 ; *Hockley* v. *Mawbey*, 1 Ves. jr. 143 ; *Doe* v. *Laming*,
2 Bur. 1110 ; *Doe* v. *Collis*, 4 D. & E. 294.    There are,
also, many cases where the word " issue " has been holden
to mean children.    2 Jarm. on Wills 36, 354, 355, &c.;
*Sibley* v. *Perry*, 7 Ves. 532 ; *Ellis* v. *Selty*, 7 Sim. 352 ;
*Pell* v. *Callon*, 9 Sim. 372.

In Powell on Devises, by Jarman, one of the best works
on this subject, it is conceded that by words " dying with-
out issue," according to their ordinary and popular significa-
tion, a testator means that the devisee shall keep the estate,
if he have issue surviving him, and not otherwise; and
where the expression is " in case the first taker die before he
have any issue," or " if he have no issue," the intention is
that the estate shall belong absolutely to the devisee, on his
having issue born.    2 Pow. on Dev. 564 ; 2 Jarm. on Wills
417.    The legal interpretation of these words may be dif-
ferent.

The complainants further contend that the will of Josiah
Downing, senior, sustains an executory devise in the com-
plainants, upon the principles declared by the court in
*Nightingale* v. *Burrell*, 15 Pick. 104.    Chief Justice *Shaw*,
in the above case, (p. 113,) says : " But if properly describ-
ed, the event of persons dying without leaving issue surviv-
ing or not, is a contingency upon which an executory devise
may be limited over, as well as the happening of any other
event.    And there may be very good reasons why a testator
should select the event as one upon the happening of which
or not the estate should remain absolute in the first devisee,
or go over to some secondary object of the testator's bounty.
We may properly consider that if the devisee, a son for in-
stance, the first object of his bounty, has children who sur-

vive him, he shall have the estate absolutely, to enable him to provide for such children, but leaving it 'o his discretion whether he will transmit the estate to them, or make any other disposition of it, as he, such first devisee, may determine. But if such first devisee should have no children to be provided for, the testator might well determine to adopt his own mode of disposing of the estate, and direct it, in that event, to vest in some other person. If, therefore, the description of this contingency is such as not to raise any implication that it is the intent of the testator that issue are to take the estate as children and heirs of the parent, then the estate limited over is a good executory devise; the first devisee has an estate in fee, determinable upon the happening of the contingency, but otherwise absolute." This is precisely the estate which, we contend, is created by the will of Downing, senior, an absolute fee in Josiah Downing, junior, but upon the contingency that if Josiah, junior, shall die, leaving no lawful issue of his body, then over to the complainants. But if Josiah, junior, shall have issue, there is no intention, express or implied, in the will, that they shall take, or that Josiah, junior, is restrained from any other disposition of the estate. Another rule of construction, recognized in *Nightingale* v. *Burrell*, that the intent of the testator must govern, and that intent to be ascertained from every word or clause in the will, taken together, however detached from each other, should have its due influence in the consideration of Downing's will. This rule or principle of construction was recognized in this State, in *Sheafe* v. *Cushing*, Rockingham Co., Dec. Term 1845.

To construe this devise an estate tail would be rendering the words " after his death " of no force or effect whatever. It would be, in fact, striking out of the will the words " if my son, J. D., should not marry," and totally subvert the idea of the testator that the property should be equally divided among Joshua, Samuel and Ebenezer. In this devise there are three circumstances, each of which has, in some

instances been thought by the court to indicate that the tes-
tator intended, by the terms he used, a definite and not an
indefinite failure of issue, and certainly when they all three
occur, the matter would seem to be put beyond the range
of doubt. The words "after his death" have a peculiar
importance when connected with the words immediately
preceding, "if my son, J. D., should marry," &c., because
they point directly to the death of him who should or
not marry. After whose death? After the death of J. D.,
the son; not at the time of the extinction of his whole issue.
And how were the three brothers to enjoy the property?
Equally. And how could this happen unless they are to
take immediately after the death of J. D., the son? Tak-
ing all the circumstances together, it would seem evident
that old Downing used the words "lawful issue of his
body," connected as they are, in their ordinary and popular
signification. The refinements and quirks of the court
upon this subject, produced in England the statute 1 Vic.
ch. 26, § 29, by which it is provided, "In any devise or be-
quest of real or personal estate, the words 'die without
issue,' or 'die without leaving issue,' or 'have no issue,' or
any other words which may import either a want or failure
of issue in his lifetime, or at the time of his death, or an in-
definite failure of issue, shall be construed to mean a want
or failure of issue in the lifetime, or at the time of the
death of such person, and not an indefinite failure of issue,
unless a contrary intention shall appear by the will," &c.
Lovelass on Wills 289, note 8; Lewis' Law of Perp. 291,
292; 2 Jarm. on Wills 413, 414, 454, 455. A similar rule
of construction was decreed by statute in Virginia, in 1819,
in Mississippi in 1824, in North Carolina in 1827, and in
New York by their Revised Statutes; 2 Jarman on Wills
455, note; 4 Kent's Com. 279, 280. It is hoped that the
courts in this State will incline to the ordinary and popular
signification of the words used by Downing, in his will, and
that they will be satisfied that his evident intent can be

carried into effect without any violation of the established authorities; that they will hold that the rule which has been considered of so much hardship as to require the inter- ference of the legislature, on both sides of the Atlantic, is to receive no particular favor from them, and to be enforced only in clear cases; that in cases of doubt they will be ready to seize upon any expressions in a will which have a ten- dency to show the intent of the testator to have been "issue," living at the time of the death of the first devisee, and give such expressions their full force and effect, thereby making the law more in accordance with modern notions and principles.

II. If the court hold that an estate tail was created in Josiah Downing, the son, the statute of June 30, 1837, does not authorize the barring of the entail by deed, it being re- trospective, and would, if such was allowed to be its ope- ration, impair the obligation of a contract. *Woart* v. *Win- nick*, 3 N. H. Rep. 473; *Proprietors of Kennebec Purchase* v. *Laboree & al.*, 2 Greenl. 275; *Society* v. *Wheeler*, 2 Gall. 105–139; *Clark* v. *Clark*, 10 N. H. Rep. 380.

III. The pretended conveyance to Margaret Wherrin is not such a deed in fee as can have that effect. The deed should be made *bona fide* for a valuable consideration. If not such, it would not be good against a *cestui que trust*, and might not against any persons having an interest or rights in the property. *Winkley* v. *Hill*, 9 N. H. Rep. 31; *Smith* v. *Smith*, 11 N. H. Rep. 459; *Dow* v. *Jewell*, now pending in court. 1 Foster's Rep. 470.

GILCHRIST, C. J. The question in this case is, whether the limitation over, after the death of Josiah, is void as an executory devise, on account of the contingency on which it is to take place being too remote. Is the limitation over to take effect only in case of the indefinite failure of the issue of Josiah, that is, in the words of the statute *de donis*, if his issue shall fail, or is it to take effect, if he shall

have lawful issue living at the time of his death? If the former, it is void as an executory devise, and Josiah was tenant in tail. If the latter, it is a good executory devise, and upon the death of Josiah, the estate vested in the persons named in the will.

It is said in 2 Powell on Dev. 583, that "where the preceding devise is sufficient to give a fee, the convenience is all on the side of the restricted construction, which renders that fee defeasible on his not leaving issue at his death, and takes the estate out of the power of the first taker, who might, if he were tenant in tail, (as he would be if the words were construed to mean an indefinite failure of issue,) defeat the estate over by suffering a common recovery. To prevent this consequence, the courts have generally lent a willing ear in favor of the restricted, and which we have seen to be the popular construction of these words."

The general position is every where, in all the cases and discussions, from the time of *Pells* v. *Brown*, Cro. Jac. 590, decided in the year 1620, to the present time, recognized as law, that the words *dying without issue*, without something to qualify them, and to point out some particular period at which the estate shall vest, import an indefinite failure of issue. It is unnecessary even to refer to the cases which establish this position, for there is no decision contrary to it. The difficulty under which the courts have labored is, to determine what words shall be considered as qualifying the general expressions, and whether the language used, upon a reasonable construction of it, points out some definite period when the limitation over shall take effect.

The rule uniformly recognized and practised upon by the courts, from the time of the Year Books to the present day is, that a devise, in fee with a remainder over, if the devisee die without issue or heirs of the body, is a fee cut down to an estate tail, and the limitation over is void by way of executory devise as being too remote, and founded on an indefinite failure of issue. Now a *definite* failure of issue

is where a precise time is fixed by the will for the failure of issue, as in the case of a devise to A., but if he die without lawful issue, living at the time of his death, then over. An *indefinite* failure of issue is the very converse of the other, and means a failure of issue whenever it shall happen, sooner or later, without any definite period within which it must happen. It means the period when the issue or descendants of the first taker become extinct, and when there is no longer any issue of the issue of the grantee, without reference to any particular time or any particular event, and an executory devise, to take effect at such a remote period of time, is void, because it might tie up property for generations. *Hall* v. *Chaffee*, 14 N. H. Rep. 220.

In considering this question, it may be remarked that when an executory devise is duly created, it is wholly exempted from the power of the first devisee or taker. The essential difference between a contingent remainder and an executory devise is, that the first may be barred or destroyed by several means, whereas an executory devise cannot be prevented from taking effect when the contingency happens, either by fine or recovery, or by any alteration of the estate, after which it is limited. 6 Cruise's Tit. Dev. ch. 17, § 14; *Moffat* v. *Strong*, 10 Johns. 12; *Jackson* v. *Bull*, 10 Johns. 19; *Jackson* v. *Robins*, 16 Johns. 597.

It is a stable and inalienable interest, and the first taker has only the use of the land pending the contingency named in the will, and if this be valid as an executory devise, Josiah Downing could not defeat it by his deed to Margaret Wherrin. It is also to be remarked that a devise, to take effect upon a general failure of issue, is void, whether the issue fail or not. It is of no importance how the fact turns out; it is void at the commencement, if it be thus limited. 6 Cruise's Dev. ch. 17, § 23.

It has been considered that there was some ambiguity in the expression, "if he should die without issue," or "without leaving issue," and a construction has been put upon

them, or upon words so nearly like them, that the difference cannot be appreciated, which makes the limitation over void, as too remote. " Leaving issue," as to realty, means leaving at the time of death. *Cole* v. *Goble*, 20 Eng. L. & Eq. Rep. 237. In that case, Lord Ch. Jus. *Jervis* says " it is well understood that the words ' having issue ' mean to apply generally, and not at the time of the death." It was there held that a devise of land to the testatrix's granddaughter, Mary Ann, " but in the event of her dying without having any lawful issue," then over, gave the devisee an estate tail. This decision is consistent with the general position stated in 2 Jarman on Wills 418, that words referring to the death of a person without issue, whether the terms be " if he die without issue," " if he have no issue," or " for want or in default of issue," unexplained by the context, import a general indefinite failure of issue. The intention of the testator is the guide of the court, but that intention must be gathered from the legal meaning of the words he employs, and the court are not at liberty to indulge in speculations as to what he probably might have meant.

Did the testator, in this case, intend that the devise over should not take effect until all the descendants of Josiah should become extinct, however remote they might be, or did he intend that it should take effect at the death of Josiah, if there were no issue of his living at that time ? This is the simple question now before us. Is there any thing to point out the time when the testator intended the devise should take effect ? If the failure of issue would be an event ascertained at the death of Josiah, it would seem that the testator could not have contemplated the failure of Josiah's remote descendants. Now if Josiah should not marry and have lawful issue of his own body, at what time are his brothers to take ? The will answers this question. It is *after his death*, that is, *upon his death;* as soon as he is dead ; and this seems to us to be the simple and obvious

construction of the will, to show that he meant that if Josiah left no issue surviving him, the land should go to his brothers, and to repel the idea that he contemplated some remote period when his issue should become extinct in some future generation. It was the state of things existing at the time of Josiah's death, which was to determine whether the future estate to his brothers should ever come into enjoyment or not.

The failure of issue will be confined to the death of the first taker, where the expression is combined with some event personal to the devisee, as in case of his dying unmarried and without issue, the word *and* being construed to mean *or.* *Wilson* v. *Bailey,* 3 Bro. P. C. 195, is one case of this kind. There, in case both of the sons of the testator, M. & J., should happen to die unmarried, and neither of them should have any issue lawfully begotten, certain leasehold estates devised to them were devised over. M. died unmarried, J. married but had no issue, and it was held that the devise over took effect, the word *and,* connecting the two parts of the condition, being construed in the disjunctive.

Here the condition is, that M. should die unmarried, and should not have issue lawfully begotten. If either of these events should happen, the devise over would be good.

In the present case, the condition is that Josiah should not marry and have lawful issue. Construing it like the case cited, if either event should happen, the devise would be good, and both are matters personal to the devisee.

In the case of *Glover* v. *Monckton,* 3 Bing. 13, there was a devise to the testator's son in fee, but if he should die under twenty-one, or if he should live to twenty-one, and afterwards die without lawful issue, then over. It was held that the limitation over was a good executory devise, in the event of his dying without issue living at his death. This decision is confirmed by the subsequent case of *Doe* v. *Johnson,* in the Exchequer, 16 L. & Eq. Rep. 550. The devise there was to S. J. in fee, but if he should die before twenty-

one, and if after twenty-one he should die unmarried, or having been married, without lawful issue, then over. It was held that S. J. did not take an estate tail, but took an estate in fee simple, with an executory devise over, in the event of his dying under twenty-one, or after that age, dying without leaving issue living at the time of his death. It is said by the court that it would be a very forced construction of the devise to hold that the third event (the dying having been married without lawful issue) pointed not to his death without leaving issue then living, but to the failure of issue of his body, at any period however remote. .

Here the expression is combined with some event personal to the devisee.

In the case of *Doe* v. *Frost*, 3 B. & Ald. 546, there was a devise in fee to W. F., " but if he should have no children, child or issue, the said estate is, on the decease of the said W. F., to become the property of the heir at law." It was held that W. F. took an estate in fee, with an executory devise, in the event of his dying without leaving children at his decease. *Holroyd*, J., says, " the will contemplates a failure of issue at the decease of William Frost," and the case is a strong one on the effect of the words " on the decease." It would be difficult to discriminate between " at his decease " and " after his death," for *after*, unless there be something to designate a period of time, means *immediately after*.

In the case of *Davies ex parte*, 9 L. & Eq. Rep. 88, the testator devised the residue of his property to his son, Matthew, in fee, provided that if he should die without leaving any lawful issue of his body, certain freehold estates should, *at his death*, be divided into two parts, which were devised over. It was held that Matthew took an estate in fee, with an executory devise over, to take effect in the event of his dying without issue living at the time of his death. The case of *Doe* v. *Frost*, above cited, was much relied on by the court.

Where the subject-matter disposed of by the will is personal estate, there seems to be no doubt entertained that the words " at " or " after " the decease of the devisee restrain the failure of issue to the time of his death, and that the devise over is good. The more prominent cases, and the precise words in them, are as follows : *Pinbury* v. *Elkin*, 1 P. Wms. 563, " then after her decease ;" *Wilkinson* v. *South*, 7 Term 555, " after his decease ;" *Gawler* v. *Cadby*, Jac. 346, " in case of her death ;" *Rackstraw* v. *Vile*, 1 Sim. & Stu. 604, " at their death." In *Pinbury* v. *Elkin*, Lord *Hardwicke* says the words " then after " mean *immediately after*. In *Donn* v. *Penny*, 19 Ves. 546, Sir *W. Grant* says the doubt upon the case of *Pinbury* v. *Elkin* is whether the word " after " be fairly construed or not. If, however, he said, that construction was right, there was no doubt it afforded a distinct period, the decease of the first taker, to which the dying without issue was to be referred.

But the cases are equally strong in this particular, where the words refer to a devise of lands. In addition to the cases of *Doe* v. *Frost* and *Davies ex parte*, above referred to, is the decision in *Robinson* v. *Grey*, 9 East 1. In that case there was a devise in trust for the benefit of daughters, but if they should die without leaving issue, then after the decease of the survivor of the daughters, in trust for a grandson in fee. It was held that the limitation over was good.

A distinction has been made between a devise of lands and a devise of personalty, upon a dying without issue. In the former case, the words are always taken to mean *whenever there is a failure of issue*, and the limitation over is void. In the latter case, they are construed in the ordinary sense, and mean *dying without leaving issue at the time of the death*. This distinction was first taken in *Forth* v. *Chapman*, 1 P. Wms. 663, and the decision has given rise to much litigation. Its soundness has been affirmed and denied by many eminent lawyers, some adhering to it, and others holding that there is no difference between a lim-

itation of real and personal property. Among those who do not recognize the distinction are Lord *Loughborough*, in *Chandler* v. *Price*, 3 Ves. 99, Lord *Alvanley*, in *Rawlins* v. *Goldfrap*, 5 Ves. 440, Lord *Kenyon*, in *Porter* v. *Bradley*, 3 Term 146, and in *Roe* v. *Jaffrey*, 7 Term 595, Sir *W. Grant*, in *Barlow* v. *Salter*, 17 Ves. 479, and the case of *Dansey* v. *Griffiths*, 4 M. & S. 62. On the other side are *Den* v. *Shenton*, Cowp. 410, and *Crooke* v. *De Vandes*, 9 Ves. 197, Lord *Eldon*, and *Doe* v. *Ewart*, 7 Ad. & El. 636. The question now before us is not involved in the above cases, and they are referred to merely on the question whether there should be any difference in the construction of words disposing of real and personal estate. Chancellor *Kent* says it would be difficult to ascertain the balance upon the mere question of authority, but the importance of uniformity in the construction of wills relative to the disposition of real property has, in a great degree, prevailed over the distinction, though in bequests of personal property the rule will more readily than in devises of land be made to yield to other expressions or slight circumstances in the will, indicating an intention to confine the limitation to the event of the first taker dying without issue living at his death. 4 Kent's Com. 282.

Now the question that has been made, and which has been discussed in the cases relative to this distinction is, whether the words *dying without issue* mean *issue living at the death*. There are no cases which decide that the words *after his death*, in a devise of lands, do not mean *issue living at the time of his death*. There are two cases where similar words were used. One is *Walter* v. *Drew*, 1 Com. 373, where there was a devise of lands to W., and *after the death* of the said W., then over, and it was held that W. took an estate tail. The other is *Doe* v. *Cooper*, 1 East 229, where there was a devise of lands to R. C., but if he should die without leaving lawful issue, then, after his decease, to G. H. It was held that R. C. took an estate tail. But in neither of these

cases was the force of the words referring to the death at all presented to the notice of the court, or remarked upon ; and in the latter case R. C. was held to take an estate tail to accomplish the general intention of the will.

In the case of *Hall* v. *Chaffee,* 14 N. H. Rep. 215, a testator devised land to his daughter in fee, provided, however, that if she should die without issue born alive of her body, *to heir her estate,* then, &c. It was held that the words *to heir her estate* showed that the testator meant the death of the first taker, without issue living at the time of her death, and that the limitation over was valid by way of executory devise, being to take effect upon a definite failure of issue. The words " after her decease " also occurred in the devise, but the question of their effect did not require to be settled.

Whether we hold that a different construction should be given to the words of devise, as they may affect real or personal estate, does not seem, in this case, to be very material. If we recognize the distinction, it does not follow that the words *after his death* do not mean the same thing, both in devises of real and personal property. Where the property is personal, they restrict the words of devise to issue living at the death. Where the devise is of land, there are strong authorities for holding that they have the same effect, and there are none which say that they do not. And as it was the obvious meaning of the testator that the brothers of Josiah should take, if he had no issue living at the time of his death, we think his intention may legally be carried into effect, and that the limitation over is good.

It stated in the demurrer that this is not a case for the jurisdiction of a court of equity. The prayer of the original bill is, that Josiah's deed should be decreed to be void, for it is very clear that it stands in the way of the rights of the plaintiffs under the will. Whatever doubts might once have been entertained of the jurisdiction of a court of equity, in such a case, have been settled by modern decisions, and the relief afforded seems to be on the principle of a bill *quia*

*timet,* lest the deed might be injuriously used against the party, or might throw a cloud or suspicion over his title. *Tanner* v. *Wise,* 3 P. Wms. 296. In *Hamilton* v. *Cummings,* 1 Johns. Ch. Rep. 522, Chancellor *Kent* said that the weight of authority and the reason of the thing are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law, and whether it be void from matter appearing on its face or from proof taken in the cause. " The jurisdiction of this court," says Chancellor *Walworth,* " to set aside deeds and other legal instruments, which are a cloud upon the title to real estate, and to order them to be delivered *up and* cancelled, appears to be now fully established." 1 Powell on Dev. 628, note 1 ; *Pettit* v. *Shepherd,* 5 Paige 501 ; 2 Stòry's Eq. § 604.

The judgment of the court is that the estate limited to the brothers of Josiah Downing, is valid by way of executory devise, and there must be a decree for the plaintiffs, according to the prayer of the bill.